BALTIMORE & O. R. CO. v. RAILROAD COMMISSION OF INDIANA.

(Circuit Court, D. Indiana.  April 25, 1912.)

No. 11,019, in Chancery.

1. RAILROADS (§ 9*)—SUITS AGAINST STATE RAILROAD COMMISSION—INDIANA STATUTE.

Under section 6, Act Ind. March 9, 1907 (Laws 1907, c. 241), amendatory of Act Ind. February 28, 1905 (Laws 1905, c. 53), creating a state railroad commission, which authorizes suits against such commission by railroad companies within 30 days after its entry of a final order to review such order, a company is not required to apply for a rehearing as a condition precedent to such a suit, although by section 7c the commission is given authority to grant rehearings and to modify its orders.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 12–19; Dec. Dig. § 9.*]

2. RAILROADS (§ 229*)—STATE REGULATION—ORDER PRESCRIBING HEADLIGHTS—VALIDITY.

An order of a state railroad commission requiring railroad companies under penalty of criminal prosecution to equip all locomotive engines used on railroads in the state with headlights "of not less than fifteen hundred candle power" is void as lacking the certainty and definiteness required in a penal statute or order, since a headlight is a combination of the light proper and the reflector, and the order contains nothing with respect to the reflectors, nor as to how the candle power of the combination may be determined.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

3. CONSTITUTIONAL LAW (§ 62*)—DELEGATION OF LEGISLATIVE POWERS.

Act Ind. March 6, 1909 (Laws 1909, c. 128), authorizing and directing the State Railroad Commission to investigate the condition and efficiency of headlights now in use on locomotive engines on the railroads in the state, and if found to be inadequate "for the protection of persons and property, or any other purpose," to require and enforce the substitution of the most practicable and efficient headlights for all purposes, is not void as a delegation of legislative power, but under it the Commission acts merely as an administrative agency for giving effect to the will of the Legislature under limitations prescribed in the act.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–102; Dec. Dig. § 62.*]

4. RAILROADS (§ 229*)—STATE REGULATION—POLICE POWERS OF STATE.

Such act and an order of the Commission made pursuant to it, if within the powers conferred, are valid as an exercise of the police power of the state, in the absence of any federal legislation on the subject under the commerce clause of the Constitution.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

In Equity.  Suit by the Baltimore & Ohio Railroad Company against the Railroad Commission of Indiana.  On exceptions to report of special master.  Exceptions overruled and report confirmed.

The following is the report of Noble C. Butler, Special Master, in Chancery:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

I find and report that the material facts established by the evidence are as follows:

An act of the General Assembly of the state of Indiana was approved March 9, 1907 (Laws 1907, c. 241), amendatory of the act of Feb. 28, 1905 (Laws 1905. c. 53), for the creation of a railroad commission, and another act was approved March 6, 1909 (Laws 1909, c. 128), concerning locomotive headlights, which is as follows:

"An act giving the Railroad Commission of Indiana specific powers to investigate and determine as to the efficiency of headlights now in use on locomotive engines on the railroads in Indiana, and to prescribe efficient and practicable headlights now in use on locomotive engines on the railroads in Indiana (sic), and to prescribe efficient and practicable headlights and to make and enforce orders with reference thereto, and declaring an emergency.

"(S. 44. Approved March 6, 1909.)

"Railroad Commission—Locomotive Headlights.

"Section 1. Be it enacted by the General Assembly of the state of Indiana, that, in addition to the powers heretofore granted to the Railroad Commission of Indiana that said Commission be, and it is hereby specifically empowered, authorized and directed, as soon as practicable after the passage of this act, to investigate the condition and efficiency of headlights now in use on locomotive engines on the railroads in this state, and if found to be inadequate for the protection of persons and property, or any other purpose, to investigate and determine what would be the most practicable and efficient headlight for all purposes, and when the Commission shall have so determined, to make and enforce against the railroad companies such order or orders as may be found to be necessary to require the equipment and installation of such headlights on the locomotives on the railroads in this state, and to this end said Commission is given power in such investigation to examine the various kinds of lights that may be suitable for locomotive headlights, and appliances therefor, to consult experts in such matters and to require the attendance of witnesses and the production of papers, documents and appliances.

"Emergency.

"Sec. 2. An emergency exists for the immediate taking effect of this act, the same therefore shall be in force from and after its passage."

Notice was given by the Commission in the Circular letter No. 39 to "All Steam Railroad Companies" on May 1, 1909, under and in accordance with said act, for a "hearing and conference," on May 20, 1909, which is as follows:

"State of Indiana,

"Railroad Commission of Indiana.

"Circular No. 39.

"Locomotive Headlights.

"To All Steam Railroad Companies:

"Your attention is called to chapter 128, page 323, Acts of 1909, of the General Assembly of Indiana, as follows below, which requires this Commission to investigate what would be the most practicable and efficient headlight.

"You are notified that the Commission, as authorized and required by this act, has instituted an inquiry and investigation of this matter, and has set the same down for hearing and conference on Thursday, the 20th day of May, 1909, at which time you and your representatives, and all persons interested, may appear and advise the Commission in this behalf. The Commission will also direct the attendance of locomotive engineers and experts so that a full and fair investigation may be made.

"By order of the Commission, Indianapolis, Ind., May 1, 1909.

"Chas. B. Riley, Secretary."

An order was made by the Commission concerning locomotive headlights on January 6, 1910, which is as follows:

"State of Indiana.

"Railroad Commission of Indiana.

"In the Matter of Inquiry as to the Condition and Efficiency of Locomotive Headlights in the State of Indiana. No. 322.

"The General Assembly in its Acts of 1909, chapter 128, page 323, having directed this Commission to investigate the condition and efficiency of the locomotive headlights in use in the state of Indiana, and the Commission having instituted an inquiry and investigation as required by said act and having given due notice, by its circular letter No. 39 to all of the railroad companies using locomotive headlights, that a hearing and conference in this behalf would take place the morning of Thursday the 20th day of May, 1909, and on said day the railroad companies, namely, Baltimore & Ohio Railroad Company, Baltimore & Ohio Southwestern Railroad Company, Chicago, Cincinnati & Louisville Railroad Company, Chicago, Indianapolis & Louisville Railroad Company, Chicago, Lake-Shore & Eastern Railroad Company, Chicago Terminal Transfer Railroad Company, Chicago, Hamilton & Dayton Railroad Company, Cleveland, Cincinnati, Chicago & St. Louis Railroad Company, Chicago & Erie Railroad Company, Evansville & Terre Haute Railway Company, Elgin, Joliet & Eastern Railway Company, Grand Rapids & Indiana Railway Company, Illinois Central Railroad Company, Indianapolis Southern Railroad Company, Indianapolis Union Railway Company, Lake Erie & Western Railroad Company, Lake Shore & Michigan Southern Railway Company, Louisville & Nashville Railroad Company, Louisville, Henderson & St. Louis Railroad Company, Michigan Central Railroad Company, New York, Chicago & St. Louis Railroad Company, Peoria & Eastern Railroad Company, Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, Southern Railway Company, Southern Indiana Railway Company, Toledo, St. Louis & Western Railroad Company, Vandalia Railroad Company, and other railroad companies, and having appeared by their counsel receivers, managers, superintendents, and master mechanics and having co-operated and assisted the Commission in this investigation, and the Commission having examined a great many managers, superintendents, master mechanics, locomotive engineers and trainmen, from time to time and having corresponded with the authorities of the states of the Union where this matter has been considered and having consulted railroad men within and without the state, and having taken scientific and expert advice, and especially the counsel of the dean of the schools of engineering and professors in said schools of Purdue University (a series of physical experiments and tests having been conducted under the direction of said dean) and the Commission having made personal investigation by its members on the railroad and locomotives using both oil and electric headlights and being fully advised and after full and laborious consideration, the Commission finds:

"That the oil headlights commonly in use on locomotive engines in this state are inadequate for the protection of persons and property; and that headlights of greater illuminating power would be the most practicable and efficient for all purposes.

"It is therefore ordered, that in place of said headlights every railroad corporation or receiver or lessee thereof operating any line of railroad in this state shall equip all locomotive engines used in the transportation of trains over the said railroads with headlights of not less than fifteen hundred (1500) candle power: Provided, this order shall not apply to locomotives regularly used in the switching of cars or trains.

"It is further ordered, that all of said railroad companies shall equip one-third of their said road engines with said headlights by the first day of July, 1910, an additional one-third of their said engines by the first of January, 1911, and the remaining one-third by the first day of July, 1911.

"It is further ordered, that the said railroad companies shall report to the Commission on the first day of July, 1910, on the first day of January, 1911, and on the first day of July, 1911, how many of their engines they have so equipped with headlights as required by this order giving the whole number

of engines in use by them, and a description of the headlight installed by them, and the numbers of the engines upon which such headlights have been placed.

"It is further ordered, that the secretary shall mail a certified copy by registered letter of this order to each of said railroad companies.

"State of Indiana—ss.: I, J. L. Reiley, Secretary of the Railroad Commission of Indiana, hereby certify that the above and foregoing is a full, true and correct copy of an order made in the foregoing entitled cause, this sixth day of January, 1910, as the same has been taken and copied from the record thereof now in my possession.

"In testimony whereof, I hereunto set my name and affix my seal of said Commission at Indianapolis, Indiana, this 6th day of January, 1910.

"[Seal.]  [Signed] Jas. L. Reiley, Secretary."

The present suit was begun on February 3, 1910, without a previous request on the part of the complainant for a further hearing or any modification of the order by the Commission.

Four propositions were advanced and controverted in the hearing before me. These propositions are: (1) That the complainant should have applied to the Commission for a rehearing before the institution of the present suit. (2) That the order of the Commission is void for uncertainty and indefiniteness. (3) That the act of 1909 is a delegation of legislative power. (4) That the order of the Commission is arbitrary and unreasonable.

On the first and second of these issues I report a finding for the complainant, which, if approved by the court, entitles the complainant to a decree.

On the third and fourth of these issues I report a finding for the defendant. which is submitted for such consideration as in the opinion of the court it should receive.

[1] The act of 1907 provides that "the Commission shall have authority to grant rehearings in any case in which it has made a final order, or to alter, change or modify any final order made by it." Section 7c. This provision confers an authority on the Commission which may be exercised on its own motion or on the motion of other parties. It confers an authority, instead of a remedy. The remedy of railroad companies for errors of the Commission is conferred on them by section 6 of the act of 1907 authorizing suits against it within thirty days after its entry of a final order in a court of competent jurisdiction in any county of the state in which they operate. Special provisions which are not applicable to the present case are made in section 3. It is nowhere provided that a party shall ask for a rehearing by the Commission previous to the institution of a suit against it, and error could not be predicated on the failure of a party to ask for such rehearing. Nothing of that sort was really decided in Railway v. Commission (Ind.) 95 N. E. 364. The original "hearing" was by the favor of the Commission. While the provisions of section 6 are broad enough to authorize suits in the federal courts, their jurisdiction is not derived from these provisions and exists independently of them. Reagan v. Trust Co., 154 U. S. 362, 391, 14 Sup. Ct. 1047, 38 L. Ed. 1014. The statutes of the United States which assimilate the forms and modes of proceeding in the federal courts to the forms and modes of proceeding in the state courts are not applicable to suits in equity. Sections 721, 913–918, R. S. (U. S. Comp. St. 1901, pp. 581, 683–685).

In Prentis v. Atlantic Coast Line, 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150, an appeal was taken by the Virginia Commission from a final decree of the Circuit Court for the Eastern District of Virginia upon demurrer and plea to the bill, which was reversed, but the Supreme Court expressly stated that the "decision does not go upon a denial of power to entertain the bills at the present stage, but upon our views as to what is the most proper and orderly course in cases of this sort when practicable," and authorized a retention of the suits by the lower court to await the result of an appeal from the order of the Commission to the Supreme Court of Appeals of Virginia, if taken by the railroad company. If taken and dismissed by the appellate court on account of delay in taking it, the railroad company would become entitled to a decree. If entertained and the order of the Commission was affirmed by the appellate court, the bill might be dismissed without prejudice and filed again.

The reason of the majority for the decision in the Prentis Case was in the fact that both the Virginia Commission and Court of Appeals were invested with legislative power, and, upon an appeal from a legislative act of the Commission, the court might substitute a legislative act of its own. The Supreme Court held in that case that the legislative process could not be arrested by a writ of injunction, or, in other words, that legislation could not be enjoined. 211 U. S. 229, 230, 29 Sup. Ct. 70, 71 (53 L. Ed. 150).

The Railroad Commission of Indiana is neither a legislative nor a judicial body. Nothing in the pleadings or evidence in the present case has indicated a desire or willingness on the part of the Commission to reconsider its order concerning locomotive headlights. On the contrary, it has produced evidence for the purpose of showing that its order is entirely sufficient and proper. But, after the evidence was closed and upon the argument, it was urged on behalf of the Commission that the complainant should not have a decree because it had not asked for a rehearing, and the rule of comity is invoked in support of that contention. If comity requires that a party shall ask for a rehearing by the Commission before the institution of a suit in a federal court of equity, it may also require that a party shall seek access to such a court only through the highest court of the state upon a writ of error from the Supreme Court of the United States and be thereby deprived of the constitutional and legal right to a hearing upon the merits in a federal court of original jurisdiction.

As a conclusion of law from these facts, I find and report that it was not the duty of the complainant to ask for a rehearing by the Commission before the institution of the present suit.

[2] 2. The order of the Commission requires that all locomotive engines used in the transportation of trains over railroads in the state of Indiana shall be equipped "with headlights of not less than fifteen hundred (1500) candle power," and provides that it shall not apply to locomotives regularly used in the switching of cars or trains. "Candle power" is a term which is used in the measurement of light, and has a definite and certain meaning. The unit of measurement is a standard candle or lamp constructed in accordance with specific requirements which are generally accepted and understood by all persons who are acquainted with the science of photometry. An equivalent of such candle or lamp, or a substitute for it, is furnished by an incandescent light of one candle power which is used as a secondary standard in photometric tests and measurements. As indicated by the origin and definition of the term, it applies exclusively to the initial source of light— the power or intensity of it without extraneous aid of any sort. Locomotive headlights have an initial source of light, and they also have reflectors which gather and concentrate the rays of light that would otherwise be emitted from the source in all directions, and throw them forward upon the track and right of way. They serve as markers to indicate the head of a locomotive, and they illuminate the track and right of way in front of it. The term in one sense defines itself, for a locomotive headlight is a light at the head of a locomotive, and every light illuminates all objects within its range. If the words of the order are given their literal meaning, it requires all locomotives in the state, except such as are used in the switching of cars or trains, to be equipped with lights of not less than 1500 candle power at the head of them, which, with the aid of reflectors, would make an illumination like that of a naval searchlight.

It is contended by the solicitor for the Commission that such a headlight with an illumination which is far in excess of what is regarded as necessary could not have been intended by its order. But a locomotive headlight is a combination of an initial source of light with a reflector, both of which are essential and inseparable parts of it, and it may be described in the words of the solicitor for the Commission as an articulated whole. Such a combination, however, has not any candle power of its own as distinguished from the candle power of the initial source of light. It is not denied that the headlights in present use upon the locomotives of the complainant satisfy all the requirements of a marker and furnish some degree of illumination upon the track and right of way. While the Commission admits that it is possible to have an excessive amount of illumination, it contends that the present

amount of illumination is insufficient for the protection of persons and property. The controversy between the parties is rather over the degree, and not the kind of illumination that should be furnished by a locomotive headlight.

Comparison of a source of light of unknown intensity with a known standard of light is made by the interposition of a photometric screen between the lights upon which their radiance is equalized, and the distance between the screen and each of the lights is then measured. The intensities of the lights are to one another as the squares of their respective distances from the screen in feet. The candle power of a source of light being ascertained, it is a constant quantity as long as the source of light is kept in proper condition, but the illumination from it diminishes according to the square of the distance in feet at which the illumination is measured. By the application of this rule and without the aid of a photometer the amount of illumination furnished by a source of light of known candle power at a given distance in any direction from it is the candle power of the source divided by the square of the distance in feet; the quotient being in foot candles or candle feet. Reflectors are not involved in the production of a source of light. Radiation from the source is controlled by them. The shape and position, size, and quality of a reflector regulate the direction and spread and amount of illumination in front of the locomotive. Illumination upon a surface or screen is an effect of the source, and, while the source is measured in candle power, its effect at a given distance, with or without the aid of a reflector, is measurable in foot candles or candle feet, which, being multiplied by the square of the distance from the surface or screen, gives the measurement in apparent or equivalent candle power, or in the number of standard candles which would be necessary to produce the same amount of light at the given distance. There is but one light in a locomotive headlight, and it has a candle power of its own. Placing a reflector behind it does not create another light with a different candle power. The candle power of that original light without a reflector and the apparent or equivalent candle power of the illumination from it at any point of distance are necessarily the same, but the apparent or equivalent candle power of the illumination from a headlight varies at every point of distance according to the dimensions and use of the reflector. These variations are a demonstration of the fact that light thrown out by a reflector is wholly devoid of that constancy which is the primary and indispensable requisite of all candle power as a standard of measurement. The apparent or equivalent candle power of such a light is not an index of its candle power, because it evidently has none.

The difficulty of giving an intelligible meaning to the order of the Commission is not overcome by a substitution of "apparent or equivalent candle power" for "candle power" where these words occur in the order. Nothing in the order indicates the point at which the measurement should be made. Suggestions that the measurement should be made at any or every point on the axis of the beam, or at a point immediately in front of the case, or at the point of greatest illumination, indicate only that the point of measurement contemplated by the order is absolutely indeterminable. Variations in the measurement of illumination in apparent or equivalent candle power in tests that were made at Avon in 1910 are as follows:

Oil at 250 feet, 642.
Oil at 350 feet, 492.
Oil at 500 feet, 487.
Acetylene at 200 feet, 2,539.
Acetylene at 350 feet, 3,215.
Acetylene at 500 feet, 3,625.
Electric at 200 feet, 39,942.
Electric at 350 feet, 54,100.
Electric at 500 feet, 62,240.

The candle power of the lights that were measured is as follows:

Oil,        28.1.
Electric,   394.64.
Acetylene,  17.07.

The report of tests of acetylene headlights by the Bureau of Standards in the Department of Commerce and Labor on further consideration of the objections to them are now admitted in evidence and they show, in one instance, variations on the axis of the beam as follows:

At  14.14  feet, 10,680.
At  20     feet, 13,560.
At  28.28  feet, 14,320.
At  50     feet, 12,000.
At  100    feet, 11,000.

At different angles of declination from the axis the variations are greatly more accentuated. Nothing can be inferred from the measurement at one point as to the measurement at another point even when made at precisely the same angle.

The order of the Commission does not contain any provision with reference to the dimensions or use of reflectors, or the spread of light from them. Penalties may be inflicted under the act of 1905 and the act of 1907 for the violation of any order of the Commission.

As a conclusion of law from these facts and for these reasons, I find and report that the order of the Commission has not the certainty and definiteness which are required in a penal statute or order, and is null and void on that account. Railroad v. Salem, 166 Ind. 71, 76 N. E. 631; Cook v. State, 26 Ind. App. 278, 59 N. E. 489.

On these issues I find and report as a further conclusion of law that the complainant is entitled to a decree in accordance with the prayer of the bill.

[3] 3. On other issues that have been considered in the hearing before me, I find and report as follows: General charge and supervision of railroads in the state of Indiana was given the Commission by the acts of 1905 and 1907. The act of 1909 authorizes and directs the Commission to make an investigation of the condition and efficiency of locomotive headlights used upon the railroads of the state for the purpose of ascertaining whether they are adequate for the protection of persons and property, and, if inadequate, to require a substitution of practicable and efficient headlights upon such railroads. Substitution could not be required by the Commission if the headlights then in use were adequate for the protection of persons and property, and, if inadequate, the Commission was authorized and directed to require and enforce the substitution of the most practicable and efficient headlights for the promotion of these ends. Action by the Commission was unnecessary if persons and property were adequately protected by the headlights then in use, and, if action was necessary, it could be taken only under the limitations of the statute. In other words, the Legislature fixed a standard of practicability and efficiency for headlights. If the headlights then in use met the requirements of that standard, action by the Commission was not required. If action by the Commission was required, it was limited by the requirements of that standard. Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523. The Commission acted in the present case merely as an administrative agency for giving effect to the will of the Legislature under limitations prescribed by the Legislature in the expression of its will. Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294.

[4] 4. The act of the Legislature was an exercise of the police power. It is not a regulation which applies to a particular locality, and it does not bear directly upon interstate commerce or invade a domain which has been already occupied by Congress under the provisions of the federal Constitution concerning such commerce. While Congress might occupy the ground which is covered by the legislation of the state and exclude such legislation, it has not enacted any laws on the subject, and by its failure to enact them has left the state free to enact laws which bear indirectly upon interstate commerce, as in the present case.

It has not been contended before me that the act of 1909 or the order of the Commission under it is inconsistent with any power granted by the Constitution of the United States, or a violation of any right secured by that instrument. But it has been urged with great earnestness that the act and

order are unreasonable, and that the reasonableness of the act and order is reviewable by a court having jurisdiction of the parties and the subject-matter. The order of the Commission, if within the powers which are conferred upon it, is entitled to the same respect as an act of the Legislature. Railroad v. Commission, 172 Ind. 113, 123, 87 N. E. 966. In a rate case it was held that the "presumption is that the rates fixed by the Commission are reasonable, and the burden of proof is upon the railroad company to show the contrary," and that rule applies to any order of a railroad commission. Railroad v. Minnesota, 186 U. S. 257, 264, 22 Sup. Ct. 900, 903 (46 L. Ed. 1151). Neither the wisdom nor the policy nor the expediency of the order of the Commission is reviewable by the courts.

It appears from the evidence that electric and acetylene headlights make a greater illumination over a greater distance on the track of a railroad than the oil headlights which are now used by the complainant; that enginemen behind electric and acetylene headlights are able to see farther ahead of the locomotive; that objects and obstructions on the track are sooner discernible by the enginemen; that they can reduce speed and lessen the force of an impact or collision where it cannot be wholly avoided; that lives and property may be saved and personal injuries averted by the discovery of objects and obstructions on the track before they are discoverable with an oil headlight; that oil headlights have a more limited range of illumination; that electric or acetylene headlights can be seen at a greater distance from crossings by the public generally. It also appears from the evidence that trains are operated at night by signal lights of different colors at stations and along the tracks and rights of way; that the block system of manual and automatic signals is required by the Commission and used upon many railroads of the state; that classification signals of different colors are carried upon the sides of locomotives indicating the character of trains which follow them; that the safety of persons and property depends upon the correct reading of all signal lights; that headlights of a higher power than an oil headlight dazzle and blind enginemen in opposition to them; that signal lights are dimmed and obscured by the intense radiance which is thrown around them; that they are frequently made to give out by way of reflection false or phantom lights which do not correctly represent their real color or condition; that trains running at a high rate of speed cannot be stopped within the range of illumination from any headlight, and cannot make their schedule time if there is a frequent reduction of speed.

The decision of the Supreme Court in Railroad v. Arkansas, 219 U. S. 453, 31 Sup. Ct. 275, 55 L. Ed. 290, which has been recently approved in a similar case from Indiana, in both of which statutes for the regulation of the size of "crews" on passenger or freight trains were upheld, contains a statement of the rules which apply to the present case. 219 U. S. 465, 466, 31 Sup. Ct. 278, 279 (55 L. Ed. 290). It was originally a proceeding against the railroad by the state for a violation of the Arkansas statute. The defense was as follows: "Defendant states that its said train was equipped with automatic couplers and air brakes, so that the cars thereof could be coupled and uncoupled without the necessity of brakemen going between the cars, and could be stopped by the application of the air brakes by the engineer of said train without the intervention or assistance of the conductor or brakeman, as required by act of Congress and the order of the Interstate Commerce Commission made thereunder; that it had employed on said train a conductor and two brakemen, and that the employment of another brakeman on said train was unnecessary, because there were no duties connected with the running and operating of said train to be performed by a third brakeman, and said act, in attempting to require the defendant to employ three brakemen on said train, attempted to require the defendant to expend a large amount of money for a useless and unnecessary purpose and to deprive the defendant of its property without due process of law, and is therefore a violation of and in conflict with section 1 of the fourteenth amendment to the Constitution of the United States." There was a judgment for the state in the trial court which was affirmed by the Supreme Court of Arkansas. 86 Ark. 412, 111 S. W. 456. The case went to the Supreme Court of the United States on the federal questions that were in-

volved in it. The whole case was not before the Supreme Court as it would have been if it had gone from a Circuit Court. Murdock v. Memphis, 20 Wall. 590, 22 L. Ed. 429; Savings Society v. Dormitzer, 192 U. S. 125, 127, 128, 24 Sup. Ct. 221, 48 L. Ed. 373. Nevertheless the reasonableness of the statute which had been upheld by the Supreme Court of Arkansas was fully considered, and the judgment of that court was affirmed by the Supreme Court of the United States. What it says on that subject, even if not decisive of the present case, has an important bearing upon it. The main controversy in the Arkansas case was over the question whether the additional and apparently superfluous trainmen required by the statute were necessary for the safe operation of trains. If unnecessary, the statutory requirement would have been arbitrary and unreasonable. But, whether necessary and reasonable or not, the Supreme Court said that it is not "so unreasonable as to justify the court in adjudging that it is merely an arbitrary exercise of power, and not germane to the objects which evidently the state Legislature had in view. It is a means employed by the state to accomplish an object which it is entitled to accomplish, and such means. even if deemed unwise, are not to be condemned or disregarded by the courts, if they have a real relation to that object." Again, it says that, until Congress has established regulations on the subject, "the statutes of the state, not in their nature arbitrary, and which really relate to the rights and duties of all within the jurisdiction, must control."

The Railroad Commission of Indiana, under the authority and direction of the Legislature, made an investigation of locomotive headlights then in use, and found them inadequate for the protection of persons and property. It found that the oil headlights which were used by the complainant are defective because they do not throw sufficient light upon the track and illuminate it far enough ahead of the locomotives to meet the legislative requirements. It was not bound by the previous use of a headlight. It could enlarge the functions of a headlight, if necessary. It decided that headlights of a higher power were required and made an order to that effect.

There is much conflict in the testimony as to the difference in illuminative power of the various kinds of headlights in common use, but it is sufficiently established that the electric or acetylene headlights which are used on railroads in and out of the state have greater illuminative power than the oil headlights in common use. There is further conflict in the testimony as to the degree of peril and danger involved in the use of the different kinds of headlights. But, according to the decisions of the Supreme Court, it is for the Commission to weigh and determine all of these matters; provided always that it reaches a conclusion which is within constitutional and statutory limitations and is germane to the objects that the Legislature had in view, and has a real and substantial relation to those objects, and is not a purely arbitrary exercise of power. It is not for a court to review the facts upon which the order is founded any further than is necessary to ascertain whether the order is within the constitutional and statutory powers of the Commission. "Power to make the order, and not the mere expediency or wisdom of having made it, is the question." Commission v. Railroad, 215 U. S. 452, 470, 30 Sup. Ct. 155, 160 (54 L. Ed. 280).

Operation of a railroad is a hazardous business, and it is more hazardous at night than it is by daylight. If the Commission, after having investigated the subject, is of the opinion that in more light upon the track there is greater safety, and gives expression and effect to that opinion by an order for headlights of a higher power than such as are now in use, it cannot be said that the order is wholly unconnected with the protection of persons and property which is the avowed purpose of it.

As a conclusion of law from these facts, I find and report that the act of 1909 is not a delegation of legislative power, and that the order of the Commission is not an arbitrary and unreasonable exercise of power within the decisions of the Supreme Court.

Calhoun, Lyford & Sheean, of Chicago, Ill., F. A. Durban, of Zanesville, Ohio, and Miller, Shirley & Miller, of Indianapolis, Ind., for complainant.

Smith, Duncan, Hornbrook & Smith and Roby & Watson, all of Indianapolis, Ind., for defendant.

ANDERSON, District Judge. Come now the parties by their respective solicitors, and thereupon the court, having heard the argument of counsel and duly considered the same, and being sufficiently advised in the premises, overrules all the exceptions to the report of the special master herein, and it is ordered that said report of the special master be, and the same is hereby, fully approved and confirmed.