STATE v. INTERNATIONAL & G. N. RY. CO.

(Court of Civil Appeals of Texas. Galveston. March 20, 1914. Rehearing Denied April 9, 1914.)

STATUTES (§ 47*)—VALIDITY—UNCERTAINTY.

In view of Const. art. 1, § 10, providing that in criminal prosecutions accused shall have the right to demand the nature and cause of action against him, and Penal Code 1911, art. 6, declaring that whenever a provision of the penal law is so indefinitely framed that it cannot be understood, it shall be disregarded, Rev. St. 1911, arts. 6581–6583, declaring that every one engaged in constructing or repairing railroad cars shall maintain a building or shed at every station where as many as five men are regularly employed for repair work, to shelter them from the elements, but excepting certain points where it is necessary to make "light repairs" only, is invalid, for while the Legislature has authority to make such regulation, the expression "light repairs" is so indefinite that an ordinary person cannot determine what repairs would constitute a violation.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 47; Dec. Dig. § 47.*]

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Suit by the State, to recover a penalty for the violation of Act 32d Leg. requiring those engaged in constructing or repairing railroad cars to furnish shelter for workmen. From an order sustaining the demurrer and dismissing the petition, the State appeals. Affirmed.

B. F. Looney, Atty. Gen., Luther Nickels, Asst. Atty. Gen., and Charles Murphy, of Houston, for the State. Wilson, Dabney & King, of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by the appellant against the appellee to recover penalties for the alleged violation by appellee of the provisions of an act of the Thirty-Second Legislature (articles 6581, 6582, and 6583, Revised Statutes 1911), requiring every person, corporation, or receiver engaged in constructing or repairing cars to erect and maintain a building or shed for the shelter and protection of the workmen employed in such work. The trial court sustained a general demurrer to the petition, and, plaintiff declining to amend the suit was dismissed.

The learned trial judge prepared in writing and filed his reasons for sustaining the demurrer, which we here copy from appellee's brief:

"This suit is brought by the state to recover penalties for alleged violation of a general statute passed at the called session of the Thirty-First Legislature. 4th Ex. Sess., c. 6.

"Section 1 of the act in question reads as follows: 'That every person, corporation or receiver engaged in constructing or repairing railroad cars, trucks or other railroad equipment, shall erect and maintain a building or

shed at every station or other point where as many as five men are regularly employed for such repair work, the building or shed to cover a sufficient portion of its track so as to provide that all men regularly employed in the construction and repair of cars, trucks, or other railroad equipment, shall be sheltered from rain and protected from other inclement weather. The provisions of this act shall not apply to points where less than five men are regularly employed in the repair service, nor at division terminals, or other points where it is necessary to make light repairs only, on cars, nor to cars loaded with time or perishable freight, nor to cars when trains are being held for the movement of said cars.'

"Section 2 of said act reads as follows: 'Any person, corporation or receiver, who shall violate the provisions of this act, shall be liable to the state of Texas for a penalty in any sum not less than fifty dollars nor more than one hundred dollars, and each ten days of such failure or refusal to comply with the provisions of this act shall be considered a separate infraction, authorizing the recovery of a separate penalty.'

"The defendant enters a general demurrer to the state's petition, and contends that this act is too indefinite in its terms to be enforceable, as the term 'light repairs' is a relative term, and wholly unintelligible.

"Article 1, § 10, of the Constitution of Texas, provides that: 'In all criminal prosecutions, the accused shall have the right to demand the nature and cause of the action against him.'

"Article 6 of the Penal Code of Texas provides that: 'Whenever it appears that a provision of the penal law is so indefinitely framed or of such doubtful construction that it cannot be understood, either from the language in which it is expressed, or from some other written law of the state, such penal law shall be regarded as wholly inoperative.'

"In G., C. & S. F. Railway Co. v. Dwyer, 84 Tex. 200, 19 S. W. 471, the Supreme Court of this state says that: 'Every man is presumed to know the law, and it would seem that before any one should be punished, either in a criminal or a civil action, for an act claimed to be penal, the offense should be clearly defined, and that any grave doubt as to the intention of the Legislature should be resolved in favor of the defendant.'

"In Chicago & Northwestern Railway v. Dey (C. C. S. D. Iowa) 35 Fed. 876, 1 L. R. A. 744, a statute which attempted to penalize the railway company for charging 'unreasonable rates' was contended to be too indefinite for enforcement. In passing upon this question, Judge Brewer, later one of the judges of the Supreme Court of the United States, in rendering the decision, said: 'If this were the construction to be placed upon this act as a whole, it would certainly be obnoxious to complainant's criticism, for no

penal law can be sustained unless its mandates are so clearly expressed that any ordinary person can determine in advance what he may and what he may not do under it.'

"Later, in the case of Tozer v. United States (C. C. E. D. Mo., N. D., 1892) 52 Fed. 917, the same judge, in passing upon the undue preference clause of the Interstate Commerce Act, speaking for the court, said: 'In order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty'—and cites his opinion in the Dey Case, with other authorities, including Ex parte Jackson, 45 Ark. 158, and textbooks on statutory construction.

"In L. & N. R. R. Co. v. Commonwealth (1896) 99 Ky. 132, 35 S. W. 129, 33 L. R. A. 209, 59 Am. St. Rep. 457, the court, in an exhaustive and thoroughly considered opinion, held that a statute of the state, providing that, 'If any railroad corporation shall charge, or collect more than a just and reasonable rate of toll for the transportation of freight or passengers, it shall be guilty of extortion, and fixing a penalty therefor,' was void for uncertainty, and in violation of both the state and federal Constitutions against the taking of property without due process of law, in that it fails to prescribe a standard as to what is just and reasonable, by which the carrier was to regulate its conduct. This cites with approval the Dey and Tozer Cases, decided at circuit by Judge Brewer, and also L. & N. Railway Co. v. Commissioners of Tennessee (C. C.) 19 Fed. 693, construing a like statute, and says that the Supreme Court of the United States, in Railway Commission Cases, 116 U. S. 336, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636, refers to the Tennessee case just cited; and substantially approves it, by distinguishing the cases before the court from the Tennessee case. In this case the Kentucky court further says that: 'No case can be found, we believe, where such indefinite legislation has been upheld by any court when a crime is sought to be imputed to the accused.'

"In Waters-Pierce Oil Co. v. Texas, 212 U. S. 109, 29 Sup. Ct. 226, 53 L. Ed. 417, the United States Supreme Court distinguishes the Kentucky case just cited from the case in hand, and says that: In the Kentucky case, 'it was held that the law was unconstitutional, for under such an act it rests with the jury to say whether a rate is reasonable, and makes guilt depend, not upon standards fixed by law, but upon what a jury might think as to the reasonableness of the rate in controversy.'

"In Augustine v. State, 41 Tex. Cr. R. 72, 52 S. W. 81, 96 Am. St. Rep. 765, the Court of Criminal Appeals of Texas held, in passing upon a statute which provided that 'when-

ever two or more persons shall combine together for the purpose of mob violence, and in pursuance of such combination shall unlawfully and willfully take the life of any reasonable creature in being, by such violence, such persons shall be deemed guilty of murder by mob violence, and upon conviction thereof, shall be punished,' etc., that the statute was unenforceable because too indefinite. In discussing the case the court says that a statute of this kind must be capable of intelligent construction and interpretation, otherwise it will be inoperative and void, and cites with approval the following from Black on Interpretation of Laws: 'The court must use every authorized means to ascertain and give it an intelligible meaning; but if, after such effort, it is found to be impossible to solve the doubt and dispel the obscurity, and if no judicial certainty can be settled upon as to the meaning, the court is not at liberty to explain or make one. The court may not allow conjectural interpretation to usurp the place of judicial exposition. There must be a competent and efficient expression of the legislative will. * * * If the terms in which a statute is couched be so vague as to convey no definite meaning to those whose duty it is to execute it, either ministerially or judicially, it is necessarily inoperative.'

"In Cook v. State, 26 Ind. App. 278, 59 N. E. 489, the court held a statute of that state, making it an offense to haul over turnpikes and graveled roads, in specific weather, loads of more than 2,000 pounds, in narrow-tired wagons, or more than 2,500 pounds in broad-tired wagons, 'void for uncertainty, because it fails to provide standard of comparison by which broad or narrow tires may be determined.' In discussing this case, the court says: 'The language of a criminal statute cannot be extended beyond its reasonable meaning; and, whenever the court entertains a reasonable doubt as to the meaning, the doubt must be resolved in favor of the accused. The court must expound what it finds written, and cannot import additional meaning without sufficient indication thereof in the words of the statute, with such aids thereto as the established rules of law authorize. * * * Where the terms of the statute are so uncertain as to their meaning that the court cannot discern with reasonable certainty what is intended, it will pronounce the enactment void'—and quotes with approval the following language from State v. Partlow, 91 N. C. 550, 49 Am. Rep. 652: 'Whatever may be the views and purposes of those who procure the enactment of a statute, the Legislature contemplates that its intention shall be ascertained from its words as embodied in it. And courts are not at liberty to accept the understanding of an individual as to the legislative intent.' And the Indiana case further says: 'There must be some certain standard by which to determine whether an act is a crime or not; otherwise, cases in all respects similar, tried before different ju-

ries, might rightly be decided differently, and a person might properly be convicted in one county for hauling over a turnpike in that county, and acquitted in an adjoining county of a charge of hauling the same load, on the same wagon, over a turnpike in like condition in the latter county, because of the difference of conclusions of different judges and juries based on their individual views of what should be the standards of comparison of tires, derived from their varying experiences, or the opinions of witnesses as to what difference of width of tires' would constitute one wagon a narrow-tired wagon and another a broad-tired wagon. If it should be said that the question as to what is a narrow-tired wagon is one which may be determined in a particular case by the jury trying it, under proper instructions from the court, can we hold that the court, in its instructions, could lay down any principle or rule which would obtain in all such cases throughout the state? If so, can this court indicate what should be the scope or tenor of such instructions?'

"In Baltimore & Ohio Railway Co. v. Railroad Commission (C. C.) 196 Fed. 690, the court held that an order of the Railroad Commission, requiring railroads to equip their road engines with lights of a certain candle power, was entirely too indefinite for enforcement, because it did not state that the candle power provided for should be at the initial source of light, or should refer to the light produced at the initial source, plus the increased light produced by the reflector.

"In the case of Chicago, I. & L. Railway v. Town of Salem, 166 Ind. 71, 76 N. E. 631, the court held that an ordinance requiring a railroad to provide lights of not to exceed 200 candle power, and give such light and service as the town maintain, is too indefinite in its description of the kind and degree of light required to be maintained, and is consequently invalid.

"In opposition to the contention made by counsel for the International & Great Northern Railroad in this case, and as tending to support the act in question, I am cited to the case of the M., K. & T. Ry. Co. v. State (decided by the Dallas Court of Civil Appeals of Texas, October 20, 1906), reported in 97 S. W. 721, construing and holding valid an act of the Texas Legislature requiring railroads 'to construct, maintain, and keep in reasonably clean and sanitary condition, suitable and separate water-closets or privies, for both male and female persons, at each passenger station on its line of railway, either within its passenger depot, or in connection therewith, or within a reasonable and convenient distance therefrom at such station,' etc., penalizing the railroads for failure to comply therewith.

"In the case just cited, it was urged, as in the case at bar, that this statute was too vague, indefinite, and uncertain in its provisions to entitle the state to recover the pen-

alties sued for, the court saying: 'If its provisions are so indefinitely framed or of such doubtful construction that it cannot be understood, either from the language in which it is expressed or from some other written law of the state, it will be held inoperative'; also that 'the statute is penal in its provisions, and, this being so, it is to be strictly construed.'

"The Court of Civil Appeals rendering this decision says that the terms 'clean and sanitary' are frequently used in ordinances and laws defining certain nuisances, and that they are usually held to be terms of such certain meaning, and so generally understood, that they can be safely submitted to a jury on an issue of fact, and cites with approval the case of Louisville & Nashville Railroad Company v. Commonwealth, 103 Ky. 605, 45 S. W. 880, construing a somewhat similar statute; and the same court again, in the case of Railway v. Commonwealth, 103 Ky. 608, 46 S. W. 697, construing the Kentucky statute, quotes, among other things, the following from the Kentucky court: 'What is a suitable and convenient waiting room and water-closet is a question about which there ordinarily can be no serious difference of opinion between persons of that class usually selected as jurymen. It is a question of fact, dependent upon the size of the city, town, or station where the railroad train stops, and the number of passengers arriving at and departing therefrom.' The Texas court then says: 'What is a clean, suitable water-closet is a question of fact, about which there can be no serious difference of opinion among jurymen, nor can they differ in what constitutes separate water-closets for male and female persons. It was also a fact for the jury to determine whether a water-closet was within a reasonable and convenient distance from the depot.' It will be noted from this decision and the Kentucky cases cited in its support that the statutes in question were sustained upon the theory that the meaning of the terms used therein was so generally known, and that no serious difference of opinion as to their meaning among jurymen could arise.

"This Texas case and these two Kentucky cases construing the water-closet statutes are the only ones to which I have been referred by the state to support their contention as to the validity of the act in question. It will be noted that the Kentucky court holding valid the water-closet statutes is the same court that in L. & N. R. R. Co. v. Commonwealth, in an able and exhaustive opinion, held invalid a statute penalizing the railroads of that state for collecting more than a 'just and reasonable rate of toll' for transportation of freight and passengers. It is also worthy of note that in the case of State v. T. & N. O. Railroad, 103 S. W. 653, the San Antonio Court of Civil Appeals, with the opinion of the Dallas court before it, held the Texas water-closet statute invalid in the following language: 'In addition, we think the terms, "suitable closet," "reasonably clean and sanitary condition," and "reasonable and convenient distance," as used in the act (at least the first and last of those designations), fail to designate with sufficient certainty what was required, and therefore failed to apprise the railway companies in advance of what they must do in order to conform to the act. The penal statute was therefore invalid. This matter is also referred to in the opinion in the case above cited.' The opinion just referred to, by the San Antonio court, is the opinion of the Supreme Court in M., K. & T. Railway Company v. State, reported in 100 Tex. 420, 100 S. W. 766, reversing the Dallas Court of Civil Appeals in the water-closet case above mentioned, cited by counsel for the state. The Supreme Court, however, in reversing the Court of Civil Appeals, does not mention that portion of the decision of the Court of Civil Appeals which upholds the water-closet law as being sufficiently certain in its terms, but reverses the case upon another point. It will therefore be seen that the Supreme Court did not, in any way, give its sanction to the holding of the Court of Civil Appeals just referred to.

"It is clear in the court's mind that the state has a perfect right under its police powers to pass and enforce a statute having the same object in view as the present one, and the court also appreciates the importance of this law to the people it is designed to protect; but the question of the protection of the people against laws so indefinitely drawn that a reasonable person cannot know in advance of committing an act that he will be transgressing a law which may deprive him of his life, liberty, or property is of a still higher degree of importance to the average man.

"That the term 'light repairs', as used in the present act, is a relative one there can be no doubt, and it also seems clear that the average man or juror has no definite conception as to what it means, when applied to repairing general railroad equipment. Of course it does not mean heavy repairs, and that brings us back to the question of what are 'light repairs.' Do 'light repairs' mean those only in which the railway company's outlay in dollars and cents for their accomplishment is small? If so, how small? Does it mean those repairs in which light materials only are used? If so, how light? Does it mean those repairs which can be quickly made? If so, how quickly? Or do all these elements in a greater or lesser degree enter into the definition of the term? Is it correct to say that reasonable minds and different juries, hearing minutely detailed by witnesses on the stand the ins and outs of the railway repair business, might not differ as to what 'light repairs' of a railroad equipment mean? Might not one jury penalize the railway to-day, and another hold it guiltless to-morrow for conducting exactly the same kind of repairs? Is the term 'light repairs,'

when applied to the equipment of a railroad, less ambiguous than the term 'narrow and broad tires' when applied to a farmer's or teamster's wagon, held ambiguous in the Indiana case, or the terms held too indefinite to support penal statutes mentioned in the other cases above cited? Does the statute under consideration in any sense meet the requirements of certainty laid down by Judge Gaines of our Supreme Court in G., C. & S. F. Railway Co. v. Dwyer, quoted above, or the requirements of any of the other courts or textwriters who have had occasion to consider the matter? It seems to me that there can be but one answer, and that in the negative.

"Holding the views I do as to the law of the case, it becomes my duty to sustain the defendant's general demurrer to plaintiff's petition, which is accordingly done."

This opinion of the trial court presents and discusses the question raised by the demurrer so clearly and exhaustively that it is unnecessary to add anything thereto, and we adopt it as the opinion of this court.

It follows that the judgment of the court below should be affirmed and it has been so ordered.

Affirmed.