STATE OF TEXAS V. INTERNATIONAL & GREAT NORTHERN RAILWAY
COMPANY.

No. 2670.   Decided November 10, 1915.

**1.—Statute—Penal Act—Certainty.**

A penal act regulating the conduct of a business will be held void if its
provisions are so vague and uncertain that those engaged in the line of industry
affected could not comprehend its meaning and know whether a given act will
violate its terms; but not, if these are as definite in meaning as the nature of
the subject will allow.   It is permissible to use a generic term describing the
prohibited act where specific enumeration is impracticable.   (Pp. 352, 355.)

**2.—Same—Railways—Car Repair Sheds—Light Repairs.**

The act requiring railways to construct sheds for the shelter of employes
engaged in repairing cars (Rev. Stats., 1911, arts. 6581, 6582), but exempting
from its operation points where it is necessary to make "light repairs" only,
is not so indefinite in its application as to be inoperative and void for uncer-
tainty.   The term is one in common use, possibly with a technical meaning,
and as clear as could be used without attempting the difficult, if not impossible
task of making a catalogue of all repairs which might be considered light.
State v. Texas & P. Ry. Co., 106 Texas, 20, followed.   (Pp. 351-356.)

Error to the Court of Civil Appeals for the First District, in an
appeal from Harris County.

The State sued the railway company for penalties for violation of
the statute.   A demurrer was sustained to its petition, and the ruling
affirmed on its appeal, whereupon it obtained writ of error.

*B. F. Looney,* Attorney-General, and *Charles Murphy* and *Luther
Nickels,* Assistants, for plaintiff in error, cited:   As to definiteness of
the statute: Rev. Stats., 1911, arts. 6581-6583; M. K. & T. Ry. Co. of
Texas v. State, 97 S. W., 721; H. & T. C. Ry. Co. v. State, 100 Texas,
420; H. & T. C. Ry. Co. v. State, 103 S. W., 449; S. A. & A. P. Ry. Co.
v. State, 120 S. W., 1077; State v. T. & N. O. Ry. Co., 125 S. W., 53;
State v. T. & P. Ry. Co. 143 S. W., 223; State v. T. & P. Ry. Co., 106
Texas, 18, 154 S. W., 1159; L. & N. Ry. Co. v. Commonwealth, 103
Ky., 605, 45 S. W., 880; Railroad Co. v. Commonwealth, 46 S. W.,
697; B. & O. Ry. Co. v. I. C. C., 221 U. S., 612; U. S. v. 420 Sacks of
Flour, 180 Fed., 518; Ohio ex. rel. Lloyd v. Dollison, 194 U. S., 445;
Katzman v. Commonwealth, 130 S. W., 990; Commonwealth v. L.
& N. Ry. Co. (Ky.), 130 S. W., 798; Waters-Pierce Oil Co. v. State,
106 S. W., 918; Waters-Pierce Oil Co. v. State, 212 U. S., 86; McGee
Irrig. Ditch Co. v. Hudson, 22 S. W., 967; State v. Murlin, 137 Mo.,
297, 38 S. W., 923; Aiton v. Board of Medical Examiners, 114 Pac., 962.
As to rules of construction:   Rev. Stats., 1911,   art. 5502; Bank v.
Parker, 192 U. S., 73; Sickles v. Sharp, 13 John., 497; R. R. Co. v.
State, 142 Ind., 428; State v. West Side Ry. Co., 47 S. W., 959;
1 Kent's Commentaries, 462; Clark v. City of Utica, 18 Barb., 451;
Higgins v. Rinker, 47 Texas, 393; Central Ry. Co. v. Hearne, 32
Texas, 547; Sedgewick on Statutory & Constitutional Law, p. 261;
Lewis' Sutherland Statutory Construction, sec. 393.

*Wilson, Dabney & King,* for defendant in error.—The statute being penal, and its enacting clause requiring the erection and maintenance of sheds and buildings of the dimensions and furnishing the protection stated at certain specified railroad stations; and the same clause also containing the proviso, among others, that the statute was without application to any station where it was necessary to make light repairs only on cars, and these provisos constituting essential elements in the definition of the offense, plaintiff could not state a case for recovery of the penalty without negativing these exceptions which entered into its definition; and there being nothing in this statute, or in any other law of the State, defining what the legislature meant by the term "light repairs," and that term being purely a relative expression, and having no definite meaning either in law or in the English language, it can not be known whether the test of light repairs was the smallness of cost, the smallness of weight of the materials used in making the repairs, or the shortness of time necessary to make same, or if either of these considerations were the test, at what point the repairs ceased to be "light repairs" and became "heavy repairs." Hence it is impossible for any person or corporation engaged in the railway business to know what was prohibited by the legislature; and the law, instead of being declared by the legislature, and a fixed and definite thing for all persons and all places in the State, depends for its meaning upon the varying opinions which different juries might entertain as to the meaning of the term "light repairs." A penal law so hopelessly indefinite and uncertain in its meaning will not be enforced by the courts which are unable in such cases to instruct the jury what is prohibited by the legislature. Such a law violates the fundamental guaranties of free government and liberty, protected alike by the Federal and State Constitutions. Constitution of Texas, art. 1, sec. 10; Constitution of Texas, art. 1, sec. 19; Constitution of U. S., XIV amendment; Cooley's Const. Limitations, 5 ed., pp. 431-432; art. 6, Penal Code of Texas; Chicago & N. W. Ry. v. Day, 35 Fed., 876; Toler v. U. S., 57 Fed., 917; L. & N. R. R. Co. v. Commonwealth of Kentucky, 35 S. W., 129; Waters-Pierce Oil Co. v. Texas, 212 U. S., 429; Augustine v. State of Texas, 41 Texas Cr., 59, 52 S. W., 81; Coop v. State, 59 N. E., 489; B. & O. Ry. Co. v. Railway Commission, 196 Fed., 690; Chicago I. & L. Ry. v. Town of Salem, 76 N. E., 631; Black's Interpretation of Laws, p. 75; State v. Partlow, 49 Am. Rep., 653; L. & N. R. R. Co. v. R. R. Com. of Tenn., 19 Fed., 679; Ex parte Jackson, 45 Ark., 158; U. S. v. Sharp, Peters C. C., 118 Federal Cases, No. 16264; The Enterprise, 1 Paine, 32 Federal Cases, No. 4499.

If the court entertains any reasonable doubt as to what it is intended by the legislature to prohibit, such doubt must be resolved in favor of defendant: G. C. & S. F. Ry. Co. v. Dwyer, 84 Texas, 200; U. S. v. Brewer, 139 U. S., —, 35 L. Ed., 193; Harrison v. Vose, 9 Howard, 13 L. Ed., p. 182; The Enterprise, 1 Paine C. C., 32 Federal Cases, No. 4499.

Exceptions concerned with definition of offense must be negatived: State v. Duke, 42 Texas, 459-460; United States v. Cook, 17 Wallace, 173, 21 L. Ed., 540; Williamson v. State, 41 Texas Cr., 461, 55 S. W., 568-570; Rice v. State, 37 Texas Cr., 36, 38 S. W., 801-802.

A penal statute must be plead with the strictness of an indictment: K. C. M. & O. Ry. v. Cole, 149 S. W., 753; State v. Williams, 14 Texas, 98; State v. Williams, 8 Texas, 255; 16 A. & E. Encyc. Pl. & Pr., p. 276, note 1.

MR. JUSTICE YANTIS delivered the opinion of the court.

Suit was by the State of Texas to recover penalties for the alleged violation of articles 6581 and 6582, Revised Statutes, 1911, which required the erection and maintenance of a building or shed by every person, corporation, or receiver, engaged in constructing or repairing railroad cars, trucks or other railroad equipment, and provided a penalty of from fifty to one hundred dollars for each ten days of its violation.

The Act has several exemptions, by the terms of which such person, corporation, or receiver, would be absolved from its penalties. Among these exemptions is the provision that the Act shall not apply at "points where it is necessary to make light repairs only." A general demurrer was sustained to the State's petition upon the ground that the Act was too indefinite in its terms to be enforcible, the trial court holding that the term, "Light repairs is a relative term, and wholly unintelligible." The Court of Civil Appeals affirmed the judgment of the trial court, adopting its opinion, which was in writing, for its own opinion, and which can be found in 165 S. W., 892.

The Act of the Legislature which is assailed, is as follows:

"Art. 6581. Every person, corporation, or receiver, engaged in constructing or repairing railroad cars, trucks or other railroad equipment, shall erect and maintain a building or shed at every station or other point where as many as five men are regularly employed on such repair work, the building or shed to cover a sufficient portion of its track so as to provide that all men regularly employed in the construction and repair of cars, trucks, or other railroad equipment shall be sheltered from rain and protected from other inclement weather. The provisions of this article shall not apply at points where less than five men are regularly employed in the repair service, nor at division terminals, or other points where it is necessary to make light repairs only on cars, nor to cars loaded with time or perishable freight, nor to cars when trains are being held for the movement of said cars.

"Art. 6582. Any person, corporation, or receiver who shall violate the provisions of the foregoing article shall be liable to the State of Texas for a penalty in any sum not less than fifty dollars nor more than one hundred dollars, and each ten days of such failure or refusal to so comply shall be considered a separate infraction authorizing the recovery of a separate penalty; provided, however, that all persons,

corporations, or receivers, affected by the preceding article, shall have until June 1, 1911, within which to comply with the provisions thereof."

The holding of the trial court, and of the Court of Civil Appeals, that the statute in question was too indefinite in its terms to be enforcible, presents the only question for our determination. It will be observed that the Act of the Legislature in question is penal in its nature, and for this reason it should be strictly construed. Construing it strictly, if its provisions are vague and uncertain of meaning to a degree that those engaged in the line of industry affected by the Act as operatives and managers of such industry could not comprehend its meaning, then the Act should be held inoperative and void for uncertainty of meaning. The provisions of the Act, in order for it to be enforcible, should be plain enough in meaning for those operating the industry affected by it to know and realize whether by engaging in an act of repair they would breach its terms. If the Act meets and fulfills the requirements of this rule, it would be sufficiently definite in meaning to be operative. If it is not sufficiently plain in meaning for those engaged in the line of industry affected to· so understand its terms and provisions, then the Act would and should be held void for uncertainty, as it would be inexcusable for a government to fine or punish its citizens for an infraction of a law which in its terms could not be understood by them. But it is equally true that if the Act of the Legislature is as definite in meaning as the nature of the subject would allow, no more than this should be expected · to meet the rule of certainty required; to hold otherwise ·would be to nullify the power of the Legislature to legislate at all on a proper subject for its consideration.

It is worthy of notice to observe that the term "light repairs," as used in said section, is not a portion of the act which penalizes the infraction of its provision, and not a portion of the Act which creates the quasi penal offense, but the term is used in a provision exempting from suit or prosecution under the Act the persons affected by its provisions. It is one of the defenses to a prosecution under the Act, which the Act itself provides for the benefit of those engaged in the construction and repair of railroad equipment. As used · in this connection we think the meaning of that portion of the Act of the Legislature which creates the offense is not rendered as uncertain as it would be if the term "light repairs" constituted an ingredient of the offense itself.

The subject of legislation was the protection of those engaged in repair work from exposure to inclement weather. This was a proper subject for legislation, and the Legislature was within its constitutional powers in considering the subject; it was their duty, however, in passing upon it to write the law plain enough to advise persons affected by it when and under what circumstances their acts and conduct would breach its terms. At the same time, no one should contend that it was the Legislature's duty to accomplish in expression

of clearness that which is impossible. While within their jurisdiction they were legislating upon a proper subject, could the Legislature have made this exemption any plainer in meaning than they did make it? The term "light repairs" is composed of two words of common and constant use by those engaged in every line of employment, and when used together should be reasonably plain in meaning to any person; and when the term "light repairs" is considered by those engaged in a special line of industry and calling, such as the railroad business, it is possible that it might have a technical meaning in common use as applied to such industry, and in such event the expression "light repairs" would mean what it is commonly understood to mean among those engaged in such special line of industry. But aside from the possibility of this technical meaning, the inquiry is pertinent as to whether the Legislature could have used plainer words than "light repairs," and conveyed a clearer meaning than that term imports. What clearer expression could have been used? What could have been provided in the Act to make the meaning plainer? It occurs to us that a more definite expression could not have been used to cover the subject intended. If a definition of the term "light repairs" had been attempted, it would have been impossible of construction unless a catalogue of all repairs that might be considered light was embraced in the Act. This would have been indeed a difficult, if not an impossible task, when all the separate parts of the complicated machinery in use in the equipment and operation of railroads which might need repairs were considered, and the character of the repairs to each of said pieces of machinery, whether "light" or otherwise, were taken into account. The task of cataloguing all repairs on all the machinery of a railroad company, and of properly classifying the repairs which would be "light repairs" would appear entirely unreasonable to demand of the Legislature. Such a rigid requirement would be too great a restriction upon the legislative functions, and if followed, would shorten the arm of the Legislature to an extent that would amount to a serious hindrance to the exercise of their constitutional functions. We know of no rule of construction that would authorize us to nullify an Act of the Legislature because of uncertainty in meaning when from the nature of the subject legislated upon no more definite meaning could reasonably be expressed, the effect of which would be to prohibit legislation upon the subject.

What constitutes "light repairs" in any stated line of industry should find little difficulty among those engaged in that particular line of employment. We think the statute in question is sufficiently definite for those affected by it to understand its meaning so as to know under what circumstances they would be transgressing its provisions. This is all that is or should be required.

Several expressions used in the Act of the Thirty-first Legislature, commonly known as the "Water Closet Law," do not seem more cer-

tain than the term "light repairs." Yet this statute has been sustained against the identical attack that is made upon the statute involved in the instant case. In the Water Closet Statute, which was penal in its nature, one of the requirements of the railroad companies was to keep water closets or privies in a "reasonably clean and sanitary condition." Another of its provisions was that said water closets should be maintained, "either within its passenger depots, or in connection therewith, or within a reasonable and convenient distance therefrom." Another, was "to keep said water closets and depot grounds adjacent thereto well lighted at such hours in the night time as its passengers and patrons at such stations may have occasion to be at the same."

At a glance it is seen, and requires no argument to establish, that each of said provisions in the Water Closet Law contains no greater degree of certainty than the Repair Statute. The Water Closet Statute was by this court held to be suitable to the subject matter of the Act, and not violative of the Constitution, or inoperative on account of uncertainty. In passing upon that case this court, speaking through Mr. Justice Phillips, clearly expressed the true rule, and the reason therefor, in the following language:

"Neither do we regard the Act inoperative or violative of either the Federal or State Constitution because of any vagueness or uncertainty in its terms. A requirement that the water closets be kept in a reasonably clean and sanitary condition, that they be located within a reasonable distance from the passenger depots or be kept in connection therewith, and that they be kept well lighted, presents no difficulty to the understanding, and should present none in its observance. Its terms are suitable to the subject-matter of the Act; and, having regard for the difference in conditions at the stations upon railway lines where it is made operative, the use of more specific language would very probably have provided only an arbitrary and impracticable rule." (State of Texas v. T. & P. Ry. Co., 106 Texas, 20, 154 S. W., 1159.)

We think the rule stated, and the reasons given therefor, in that case by this court have direct application to the question involved in this case.

In 1907 the Federal Congress passed an Act regulating the hours of service for the employees of common carriers. [Act of March 4, 1907, c. 2939, sec. 2, 34 Stats., 1416, U. S. Comp. Stats., 1913, sec. 8678.]

Among its provisions is this:

"Telegraph operators, train dispatchers, etc., are not permitted to serve more than nine hours in the twenty-four-hour period in offices operated continuously night and day or thirteen hours in offices operated only during day time, except in case of emergency, when the employees named in this proviso may be permitted to be and remain on duty for four additional hours in the twenty-four-hour period, or not exceeding three days in any week."

The constitutionality of this Act of Congress was assailed on the ground that the use of the term, "except in case of emergency" rendered the Act so uncertain and vague as to be incapable of enforcement as a penal statute. This contention was overruled by the United States Supreme Court in the case of Baltimore & Ohio Railway Company v. Interstate C. C., 221 U. S., 612, 55 L. Ed., 878, 31 Sup. Ct., 621. In passing upon the question that court said:

"It is said that the words, 'except in case of emergency,' make the application of the act so uncertain as to destroy its validity. But this argument in substance denies to the legislature the power to use a generic description, and -if pressed to its logical conclusion would practically nullify the legislative authority by making it essential that legislation should define, without use of generic terms, all the specific instances to be brought within it. In a legal sense there is no uncertainty. Congress, by an appropriate description of an exceptional class, has established a standard with respect to which cases that arise must be adjudged."

. The Texas Anti-Trust Act of 1899 denounces contracts and arrangements, "reasonably calculated to fix and regulate the price of commodities, etc." And the Texas Anti-Trust Act of 1903 prohibits acts which "tend to fix and regulate the price of commodities." Each of said Acts was penal in its nature. They were attacked on the ground that they were vague, indefinite and uncertain. The Court of Civil Appeals overruled this contention in the case of Waters-Pierce Oil Company v. The State, 48 Texas Civ. App., 162, 106 S. W., 918. This court denied a writ of error in said case. The same attack was made upon these Acts in the same case before the United States Supreme Court, and their contention that the Acts were vague and uncertain was overruled by that court. 212 U. S., 86, 53 L. Ed., 417, 29 Sup. Ct., 220.

These statutes contain a greater element of uncertainty than does the statute involved in the case under consideration. The Sherman Anti-Trust Act is not more specific than this statute which requires the erection of sheds for repair work, and it has been many times sustained against attacks for uncertainty in meaning. That Act provides that:

"Sec. 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. Every person who shall make any such contract, or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

"Sec. 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, and,

on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court." Act of July 2, 1890, c. 647, 26 Stat., 209, U. S. Comp. Stats., 1913, secs. 8820, 8821.

It contains no definition or explanation of the meaning of a, "contract or combination in the form of trust," or of the expression, "conspiracy in restraint of trade," or of the expression, "who shall monopolize," or of the expression, "combine or conspire with other persons," but it has withstood many attacks for uncertainty of meaning. United States v. Knight Company, 156 U. S., 1, 39 L. Ed., 325, 15 Sup. Ct., 249; United States v. Trans-Missouri Freight Assn., 166 U. S., 291, 41 L. Ed., 1007, 17 Sup. Ct., 540; United States v. Joint Traffic Association, 171 U. S., 505, 43 L. Ed., 259, 19 Sup. Ct., 25; Hopkins v. United States, 171 U. S., 578, 43 L. Ed., 290, 19 Sup. Ct., 40; Anderson v. United States, 171 U. S., 604, 43 L. Ed., 300, 19 Sup. Ct., 50; Addyston Pipe & Steel Co. v. United States, 175 U. S., 211, 44 L. Ed., 136, 20 Sup. Ct., 96; Montague & Company v. Lowry, 193 U. S., 38, 48 L. Ed., 608, 24 Sup. Ct., 307; Northern Securities Company v. United States, 193 U. S., 197, 48 L. Ed., 679, 24 Sup. Ct., 436.

These instances serve to illustrate the futility of the contention that the Act of the Legislature which requires shelter to be provided for the employees of railway companies when engaged in the construction or repair of their equipment is too vague and indefinite to be operative. We think the term "light repairs" makes plain the intent of the Legislature, and that the industries affected by the legislation will not suffer from a failure to understand its meaning; and that the courts and juries will find no difficulty in determining from the facts in each case whether the repairs were "light" or otherwise. We conclude that the holding of the Court of Civil Appeals, and of the trial court, should be reversed and the cause remanded for another trial, and it is so ordered.

*Reversed and remanded.*