

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 17, 1962

Honorable A. W. Walker
County Attorney
Spur, Texas

Opinion No. WW-1388

Re: Whether the term "Highway
Post Office" vehicle as
used in Article 827a, Sec-
tion 8(b) applies to con-
tract carriers of U.S. mail.

Dear Mr. Walker:

     In your request for an opinion from this office you
stated the following facts:

     "We have a man in Dickens County who has a
contract with the Federal Government to carry
mail from Spur to Lubbock. He operates his own
truck, carries other items besides the mail, and
could be properly termed a common carrier. The
only post office service he renders is the pure
transportation of the mail. The question is:
should his truck for speeding purposes be classi-
fied as a commercial vehicle under Section (4)
or should it be classified as a 'Highway Post
Office' vehicle under Section (5)."

     The sections referred to in your letter are subsections
(4) and (5) of Section 8(b), Article 827a, and they provide as
follows:

     "(4) Forty-five (45) miles per hour at all
hours in locations other than business or residence
districts for commercial vehicles except commer-
cial vehicles which are in authorized use as 'High-
way Post Office' vehicles, and for truck-tractors,
trailers, or semi-trailers, as defined in this Act;

     "(5) The speed for any motor vehicle engaged
in this State in the business of transporting pas-
sengers for compensation or hire or for any commer-
cial vehicle which is in authorized use as a
'Highway Post Office' vehicle for furnishing High-
way Post Office service in transportation of United
States mail shall be the same as prescribed for all
vehicles except commercial vehicles, trucks, tractors,
trailers or semi-trailers as provided in paragraph
(2) as hereinbefore set forth."

The above provisions as to Highway Post Office vehicles first appeared in the 1955 amendment of Article 827a, 54th Leg., ch. 488, p. 221. Subsection 5 thereof was amended again in 1961, 57th Leg., ch. 304, p. 662. The only change noted in the 1961 amendment was that the term "Highway Post Office" as used in the phrase "for furnishing Highway Post Office service" was capitalized.

Article 7, Vernon's Penal Code of Texas provides as follows:

"This Code and every other law upon the subject of crime which may be enacted shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects; and no person shall be punished for an offense which is not made penal by the plain import of the words of a law."

Article 10, Section 1, Vernon's Civil Statutes, provides as follows:

"1. The ordinary signification shall be applied to words, except words of art or words connected with a particular trade or subject matter, when they shall have the signification attached to them by experts in such art or trade, with reference to such subject matter."

Article 10, Vernon's Civil Statutes, describing rules for the construction of civil statutory enactments applies and is of binding force in criminal prosecutions. Bradfield v. State, 166 S.W. 734 (Tex.Crim. 1914).

In construing a statute, the legislative intent, if that intent can be ascertained, must govern. That the legislature had in mind a specific type of vehicle in writing the exception to Subsection 4 is evidenced by the fact that the term "Highway Post Office" is both capitalized and set out in quotation marks.

In State v. International & G. N. Ry. Co., 107 Tex. 349, 179 S.W. 867 (1915), the court in construing a penal statute requiring railroads to build and maintain buildings whenever they repaired railroad equipment in certain instances, but excepting "light repairs," stated as follows:

"It will be observed that the act of the Legislature in question is penal in its nature, and for this reason it should be strictly construed. Construing it

strictly, if its provisions are vague and uncertain of meaning to a degree that those engaged in the line of industry affected by the act as operatives and managers of such industry could not comprehend its meaning, then the act should be held inoperative and void for uncertainty of meaning. The provisions of the act, in order for it to be enforceable, should be plain enough in meaning for those operating the industry affected by it to know and realize whether by engaging in an act of repair they would breach its terms. If the act meets and fulfills the requirements of this rule, it would be sufficiently definite in meaning to be operative . . . ." (Emphasis added)

In Texas & N. P. Railroad Company v. W. A. Kelso Building Materials Co., Inc., 250 S.W.2d 426 (Civ.App. 1952 error ref. n.r.e.) the Court stated as follows:

". . . where a word is used in a statute it should usually be construed in its ordinary rather than in its technical sense. 'But when a term unknown to the law has a peculiar or technical meaning as applied to some art, science or trade, the court will look to the particular art, science or trade from which it was taken in order to ascertain its proper signification. . . .'"

The Post Office Department transports mail over the highways in two ways: (1) by common or contract carriers, known as Star route carriers, and (2) by Highway Post Office vehicles. A Highway Post Office vehicle is defined in Section 523.111 of the Postal Manual as:

"Highway post offices are bus-type vehicles operated over designated routes, authorized by the Post Office Department for the acceptance, receipt, distribution, storage, dispatch and delivery of mail by mobile clerks. All these vehicles are operated by private individuals or companies under contract with the Department." (Emphasis added)

The principal difference between the two types of carriers is that a Highway Post Office vehicle is a specially designed vehicle used to carry postal employees and designed so that they may sort and work the mail as they move from town to town, and is used to furnish post office services to the towns along its route. They perform basically the same type of service rendered by the railroad mail cars. Star route carriers

are simply common carriers transporting sacked railroad mail between towns or cities in any suitable type of commercial vehicle. They perform no other service than the actual transporting of the mail.

It is our opinion therefore that the term "Highway Post Office vehicle" as that term is used in Subsection 4 and 5 of Section 8(b), Article 827a, is not so uncertain and vague as to be unconstitutional under Article 6, Vernon's Penal Code of Texas, and Article I, Section 10 of the Constitution of Texas, and that under the facts stated in your letter, the vehicle in question would not be a Highway Post Office vehicle but is simply a commercial vehicle as that term is defined in Article 827a.

## S U M M A R Y

A commercial vehicle used by a common carrier in the transportation of United States mail over the highways, and that is used to transport other commodities at the same time and that is used to perform no Post Office service except the actual hauling of sacked mail is not a Highway Post office vehicle within the meaning of Article 827a, Section 8(b), Subsections (4) and (5), Vernon's Penal Code of Texas.

Sincerely,

WILL WILSON
Attorney General of Texas

By: *Marvin F. Sentell*

Marvin F. Sentell
Assistant Attorney General

MFS:jkr

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Pat Bailey
Joe Osborn
Marietta Payne

REVIEWED FOR THE ATTORNEY GENERAL

BY: Houghton Brownlee, Jr.