**TEXAS LIQUOR CONTROL BOARD,**
Petitioner,

v.

**The ATTIC CLUB, INC. et al., Respondents.**

No. B–2031.

Supreme Court of Texas.

July 8, 1970.

Rehearing Denied July 29, 1970.

Crawford C. Martin, Atty. Gen., Jay Floyd, Asst. Atty. Gen., Austin, for petitioner.

Carr, Osorio, Palmer, Dickson, Long & Coleman, E. Eugene Palmer, Austin, for respondents.

STEAKLEY, Justice.

The Texas Liquor Control Board, now the Texas Alcoholic Beverage Commission,[1] on May 14, 1969, promulgated Rule and Regulation No. 56 to become effective on September 1, 1969. Its full text is set forth in the attached Appendix. Respondents, The Attic Club, Inc., and the Black Garter Club, private club registration permittees under the Texas Liquor Control Act, Art. 666–1 et seq., Vernon's Texas Penal Code, filed this suit for themselves and as a class action to restrain enforcement of the rule. See Kee v. Baber, 157 Tex. 387, 303 S.W.2d 376 (1957); Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709 (1945); and cf. Texas State Board of Examiners in Optometry v. Carp, 162 Tex. 1, 343 S.W.2d 242 (1961). Upon temporary injunction hearing, the trial court found probable injury but not probable right and denied temporary injunctive relief;[2] see Texas Liquor Control Board v. Diners' Club, Inc., 347 S.W.2d 763 (Tex.Civ.App.1961, error ref'd n. r. e.). The Court of Civil Appeals reversed and rendered judgment for Respondents. 450 S.W.2d 149. We reverse.

Art. 666–2 of the Texas Liquor Control Act, recites that "This entire Act shall be deemed an exercise of the police power of the State for the protection of the welfare, health, peace, temperance, and safety of the people of State" and directs that "all its provisions shall be liberally construed for the accomplishment of that purpose."

Art. 666–6 vests the Commission with "power and authority to prescribe all necessary rules and regulations to that end;" namely: "to supervise, inspect, and regulate every phase of the business of manufacturing, importation, exportation, transportation, storage, sale, distribution, possession for the purpose of sale, and possession of all alcoholic beverages, including the advertising and labeling thereof, in all respects necessary to accomplish the purposes of this Act."

Art. 666–7a provides the procedure for the adoption of rules or regulations for which a penalty is prescribed:

"No rule or regulation for which a penalty is prescribed either by this Act or by the Board, shall be adopted by the Board except after notice and hearing. Notice of such hearing shall be given by publication in three (3) newspapers of general circulation in different sections of the State. Such notice shall specify the date and place of hearing and the subject matter of the proposed rule or regulation and shall constitute sufficient notice to all parties. The date of hearing shall be not less than ten (10) days from the date of publication of notice. At such hearing any person, either by himself or by attorney, may present relevant facts either in support or opposition thereto. The Board shall upon a finding of facts, have the authority and power to adopt, modify, nullify, or alter such rules or regulations.

Upon the final adoption of any rule or regulation, the Board shall cause the same to be published one time in a newspaper of general circulation in this State and the same shall have the force and effect of law as of the date of publication, unless a different date is specified therein. The publication thereof shall be sufficient notice to all parties. Any person who violates any valid rule or regulation or any provision thereof shall be guilty of a misdemeanor and upon conviction thereof shall be subject to the penalty as prescribed in Section 41, Article I of this Act."

Respondents acknowledge that the Board conformed to the statutory requirements of notice, hearing and publication in the

---

1. See Acts 1969, 61st Leg., p. 1048, ch. 341.

2. The trial court did grant Injunctive Relief Pending Appeal pursuant to Art. 4662, R.C.S.1925, and Rule 385, Texas Rules of Civil Procedure.

promulgation of Rule 56. They say, however, that the absence of findings of fact is fatal to its validity. The contention is that Art. 666–7a conditions the authority and power of the Board to adopt rules and regulations upon findings of fact reduced to writing in the promulgating order, or in other records of the Board. Additionally, Respondents contend that Sections 3 and 4 of the Rule are unenforceably vague, indefinite and ambiguous.

The statutory procedure for the adoption of rules and regulations for which a penalty is prescribed is plainly stated. There must be notice and hearing and at the hearing any person may present relevant facts either in support of or in opposition to the proposal. The Board is clothed with the authority and power to adopt the proposal if the facts are found to support such action. It is not here contended as a basis for the claimed procedural invalidity that the Board did not act upon the basis of facts found, or that the facts do not support its action. The argument of invalidity, and the ruling of the Court of Civil Appeals, are grounded on the proposition that specific fact findings were not contained in the promulgating order, or in other records of the Board, the presupposition being that such is a requirement of the statute.

The intermediate court cited Skates v. City of Paris, 363 S.W.2d 425 (Tex.Sup.1963) as controlling; reference was also made to Railroad Commission v. Roberdeau, 150 Tex. 506, 242 S.W.2d 881 (1951); Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759 (1951); and Thompson v. Hovey Petroleum Company, 149 Tex. 554, 236 S.W.2d 491 (1951). The statute in *Skates,* and in City of Houston v. Melton, 163 Tex. 294, 354 S.W.2d 387 (1962), concerned the dismissal of a particular employee and provided that such should not be done "except on a finding by the Commission of the truth of specific charges against such employee." The *Roberdeau, Thomp-*

*son,* and *Hovey Petroleum* cases concerned the granting of motor carrier operating rights to a particular applicant, it being provided by statute that the order granting the application would "be void" unless "full and complete findings of fact" were set forth in the order. In each instance compliance with the statutory requirement was held to be prerequisite to the validity of the order in question. The statute here, however, concerns the adoption, after notice and hearing, of rules and regulations that are legislative in nature and which carry a presumption of the existence of facts justifying the specific exercise of the legally delegated authority. This presumption is strengthened in an exertion of the police power where the regulation is adopted after notice and public hearing. Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 (1946). Article 666–7a does not require an order of the Board adopting rules in an exercise of its delegated powers to contain findings of fact, or that findings of fact be otherwise reduced to writing. The statute says no more than that the Board is empowered to act upon a finding of facts; special or written findings are not declared prerequisite to the validity of the order. The statute may not be enlarged by implication to include these unstated requirements, particularly where the subject matter is regulation for general application within delegated authority and not action affecting a particular person or entity. This distinction is drawn in Pacific States Box & Basket Company v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138 (1935):

"But where the regulation is within the scope of authority legally delegated, the presumption of the existence of facts justifying its specific exercise attaches alike to statutes, to municipal ordinances, and to orders of administrative bodies. * * * Here there is added reason for applying the presumption of validity; for the regulation now challenged was adopted after notice and public hearing as the statute required. It is contended

that the order is void because the administrative body made no special findings of fact. But the statute did not require special findings; doubtless because the regulation authorized was general legislation, not an administrative order in the nature of a judgment directed against an individual concern."

The second attack upon Rule 56 claims unconstitutional vagueness in these provisions:

Section 3(3):

"The word 'guest' shall mean an individual who is personally known by the member or one of the member's family and who is admitted to the club premises by personal introduction of, or in the physical company of, the member or one of the member's family. If a guest who is not in the physical company of a member or one of the member's family incurs an indebtedness, such indebtedness shall be billed to and paid by the member."

Section 4:

"A Private Club shall provide regular food service adequate for its members and their guests. The term 'food service adequate for its members and their guests' shall mean that complete meals shall be available on the club premises for service to members, their families, and guests."

Art. 666–15(e) contains the following definitions:

1. "For purposes of this Act, the following definition of words and terms shall apply:

(a) 'Private Club' shall mean an association of persons, whether unincorporated or incorporated under the laws of the State of Texas, for the promotion of some common object and whose members must be passed upon and elected as individuals, by a committee or board made of members of the club. Such club shall own, lease or rent a building, or space in a building of such extent and character as in the judgment of the Liquor Control Board, is suitable and adequate for *its members and their guests* [3] and shall provide regular food service adequate for *its members and their guests * * *.*

(b) 'Locker System' shall mean that system of alcoholic beverages storage whereby the club rents to its members lockers wherein the member may store alcoholic beverages for consumption by himself *or his guests.* All such alcoholic beverages so stored under the 'locker system' shall be purchased and owned by the member as an individual. * * *

5. 'A Private Club Registration Permit shall be displayed in a conspicuous place at all times on the licensed premises and shall permit alcoholic beverages *owned by members* of the club to be stored, possessed, mixed, or consumed and served by the drink or in broken or unsealed containers on the club premises, but only by or to *members* owning such alcoholic beverages or such members' families *or their guests; * * *.*

* * * * * *

6b. 'Neither the preparation and/or serving of alcoholic beverages by a private club to its members *and guests,* nor the collection of gratuities from members *and guests* shall be considered as a sale for consideration and shall be completely exempt from the provisions of the Limited Sales, Excise and Use Tax Act, as amended. * * *'"

 The statute does not define the term "guest" or the phrase "regular food service adequate for its members and their guests;" it does however, make abundantly clear the legislative intent that non-member recipients of private club privileges are to be actual and legitimate guests of club members, and that a bona fide

3. All italics are those of the writer.

food service is to be provided by the club. Rule 56 was promulgated by the Board in the exercise of its delegated authority for the purposes of implementing the expressed and necessarily implied statutory purposes. Cf. Texas Liquor Control Board v. Super Savings Stamp Company, 303 S.W.2d 536 (Tex.Civ.App.1957, writ ref. n. r. e.). The Court of Civil Appeals found invalidating uncertainty in the requirement of Section 3(3) of Rule 56 that an individual must be personally known to a member of a private club to qualify as a guest under the statute; in the requirement that a guest must be admitted to the club premises by personal introduction of his host if he is not accompanied by the member or by a member of the family of the member; and in the requirement of Section 4 that complete meals shall be available to members, their families, and their guests. Our views are otherwise. The statutory words "guests," and "regular food service adequate for its members and their guests," are words of general understanding and Rule 56 plainly gives effect to the statutory requirements. The rule requires no more than that private clubs determine the credentials of a guest and hence his right to enjoy club favors, by the simple test of whether he is personally known to and vouched for by a host-member. This is accomplished at hand if the member or one of his family accompanies the guest; otherwise, it is to be accomplished by personal introduction and this can only mean by accepted forms of communication from the host-member to the club. Likewise, the implementation of the statutory requirement that a private club "shall provide regular food service adequate for its members and their guests," in terms of "complete meals available on the club premises," is, in our opinion, sufficiently understandable to the operators of private clubs. "Complete" carries the idea of having the necessary items of a meal and "available" requires the meals to be reasonably obtainable on the club premises whether from a kitchen maintained by the club or by means of an established catering service. It occurs to us that Rule 56 is as definite in expression of the legislative intent as could be expected, and that the essential specificity is here. See State v. International and G. N. Ry. Co., 107 Tex. 349, 179 S.W. 867 (1915). A rule or order promulgated by an administrative agency acting within its delegated authority should be considered under the same principles as if it were the act of the Legislature. Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 (1946). A statute is fatally vague only when it exposes a potential actor to some risk or detriment without giving him fair warning of the nature of the proscribed conduct. Rowan dba American Book Service, et al. v. United States Post Office Department, et al., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736. Due process is violated only when a required course of conduct is stated in terms so vague that men of common intelligence must guess at what is required, Lone Star Gas Co. v. Kelly, 140 Tex. 15, 165 S.W.2d 446 (1942); or, as expressed in *Rowan,* when there is a substantial risk of miscalculation by those whose acts are subjected to regulation. Such is not the case here. All that Rule 56 requires is that private clubs conduct their affairs as contemplated by the enabling definition in Art. 666–15(e); this means that club privileges and immunities are not to be available to strangers or those who happen by, and that a token or less than complete food service for the members and their guests will not suffice.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

## APPENDIX

TEXAS LIQUOR CONTROL BOARD

AUSTIN, TEXAS

RULE AND REGULATION NO. 56

Re: Private Clubs

SECTION 1. Definitions.

(1). "Club" shall mean a private club.

(2). "Member" and "membership" shall refer to a member of and membership in a private club unless otherwise indicated by context.

(3). Any word, term or phrase which is used herein and is defined in the Texas Liquor Control Act shall have the same meaning when used herein as when used in the Texas Liquor Control Act.

## SECTION 2.

(1). No private club shall be qualified to hold a Private Club Registration Permit unless it shall:

(a). Have twenty-five or more members at all times.

(b). Have a membership committee composed of three or more members of the club and vested with authority by charter, by-law or regulation to approve or reject membership applications and terminate existing memberships. The governing body of a club, if qualified under this provision, may be the membership committee, and when functioning as such shall be subject to and governed by all provisions herein relating to the membership committee. When considering a membership application or termination of membership, the membership committee shall keep written minutes showing the meeting date, the names of all committee members present, the name of any person admitted to membership, and the name of any person whose membership was terminated. No minutes shall be required of any discussion or action regarding a membership application which is denied.

(c). Have, other than charter members, no members except those approved by at least three members of the membership committee at a meeting of such committee.

(d). Keep a well bound book in which is shown the following about each member: The full name of the member, his initial membership number which shall be issued in sequence, the current complete address of such member, the date such member was admitted to membership if such be after the effective date of this Rule and Regulation, and the date such member was removed from membership if such be after the effective date of this Rule and Regulation. Provided that when a member has been removed from membership, his membership number may be reassigned to another member. Provided further that additional well bound books may be used if necessary to record the information required by this paragraph, but all such books shall be kept permanently by the club. Provided further that a club using a business machine to maintain its membership records shall not be required to keep a well bound book if such machine provides such information as shall be required by the Administrator, and is approved in writing by the Administrator.

(e). Keep all books, records and minutes required herein on the premises of such club, and make them available to any representative of the Board upon reasonable notice.

(f). Maintain in force a bond executed by: The corporation, as principal, if an incorporated club; or, an officer of the club, as principal, if an unincorporated club. Such bond shall be executed by a surety company duly authorized and qualified to do business in this state, as surety, in the amount of two thousand dollars payable to the State of Texas conditioned that all fees owed by such club to the State of Texas shall be paid. Such bond shall be in a form approved by the Board and the Attorney General of Texas.

(g). If operating under the locker system, at all times keep all liquor owned by each member under the locker system in a locker located on the premises and rented only to such member, except when the member, one of his family or his guest is present on the premises and using such liquor. Each club operating under the locker system shall, on a form approved by the Administrator, file quarterly a sworn statement showing the number of lockers rented

and the total rental collected during each calendar month of the quarterly period. Such quarterly periods shall begin on the first day of September, December, March and June. Each quarterly statement must be received at the office of the Administrator in Austin, Texas, on or before the 30th day after the end of the quarterly period.

(h). If operating under the pool system, keep a well bound book in which is recorded the following about each member of the pool: His name and membership number, the date and amount of each liquor pool assessment, and the date of payment of the assessment. The information required to be kept in a book by this paragraph may be kept in the book required in Section 2(1) (d) of this Rule and Regulation. Provided that a club using a business machine to bill each member of its liquor pool shall not be required to have such well bound book if such machine provides such information as shall be required by the Administrator and is approved in writing by the Administrator. Each club operating under the pool system shall, on a form approved by the Administrator, file quarterly a sworn statement showing income and disbursements in the operation of the pool, assessments, and payments of assessments during each calendar month of the quarterly period. Such quarterly periods shall begin on the first day of September, December, March and June. Each quarterly statement must be received at the office of the Administrator in Austin, Texas, on or before the 30th day after the end of the quarterly period.

(i). File quarterly a sworn statement, on a form approved by the Administrator, showing the highest number of club members in good standing attained during each calendar month of the quarterly period. Such quarterly periods shall begin on the first day of September, December, March and June. Each quarterly statement must be received at the office of the Administrator in Austin, Texas, on or before the

30th day after the end of the quarterly period.

(2). No membership shall be terminated except by action of the membership committee or by written resignation of the member. Resignation of any member shall be recorded immediately in the minute book of the membership committee and in the records required by Section 2(1) (d) of this Rule and Regulation.

(3). The Board or Administrator may, after notice and hearing, refuse to issue a Private Club Registration Permit if it is found upon substantial evidence that the applicant has failed to comply with any requirement set forth in Section 2 of this Rule and Regulation.

(4). After notice and hearing the Board or Administrator may suspend for a period not exceeding sixty days, or cancel, a Private Club Registration Permit if it is found upon substantial evidence that the holder of the permit, its governing body, or any of its committees, officers, directors, members, agents, servants or employees has failed to comply with any requirement set forth in this Rule and Regulation.

SECTION 3. As provided in Article I, Section 15(e) of the Texas Liquor Control Act, alcoholic beverages owned by members of a private club may be served only to and consumed only by a member, a member's family, or their guests.

(1). The word "member" shall mean a person who has been admitted to membership as provided in Section 2 of this Rule and Regulation.

(2). The term "member's family" shall mean the spouse, parents and adult children of the member.

(3). The word "guest" shall mean an individual who is personally known by the member or one of the member's family and who is admitted to the club premises by personal introduction of, or in the physical company of, the member or one of the member's family. If a guest who is not in

the physical company of a member or one of the member's family incurs an indebtedness, such indebtedness shall be billed to and paid by the member.

SECTION 4. A Private Club shall provide regular food service adequate for its members and their guests. The term "food service adequate for its members and their guests" shall mean that complete meals shall be available on the club premises for service to members, their families, and guests.

SECTION 5. After notice and hearing the Board or Administrator may suspend for a period not exceeding sixty days, or cancel, a Private Club Registration Permit if it is found upon substantial evidence that the club or any of its members, agents, servants or employees has:

(1). Served, consumed or permitted another person to consume an alcoholic beverage on the premises of the club at any time when the Private Club Registration Permit of such club is suspended by an Order of the Administrator.

(2). Made a false statement or a misrepresentation in any book, record, minutes or report, or other written matter required to be kept or reported by this Rule and Regulation or by any provision of the Texas Liquor Control Act.

SECTION 6. All Rules and Regulations, directives, bulletins and policies of the Board or Administrator which are in conflict with the provisions of this Rule and Regulation are hereby repealed. Rule and Regulation No. 52 is hereby repealed.

SECTION 7. If any section, clause or part of the above provisions shall for any reason be held invalid, such decision shall not affect the remaining portions of the above provisions. It is hereby declared to be the intention of the Board to have promulgated and adopted each section, clause and part of the above provisions irrespective of the fact that any other section, clause or part of the above provisions may be declared invalid; that is, it is the intention of the Board that each of the above provisions and portions thereof be severable.

SECTION 8. This Rule and Regulation shall become effective on the 1st day of September, 1969.