# Supreme Court of Texas

No. 24-1070

River Creek Development Corporation and City of Hutto, Texas,

*Petitioners*,

v.

Preston Hollow Capital, LLC; 79 HCD Development, LLC; Public Finance Authority; and U.S. Bank National Association,

*Respondents*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued March 3, 2026**

JUSTICE BUSBY delivered the opinion of the Court, in which Justice Lehrmann, Justice Devine, Justice Bland, Justice Huddle, Justice Young, and Justice Sullivan joined.

JUSTICE HAWKINS filed an opinion concurring in the judgment, in which Chief Justice Blacklock joined.

The central question in this case is whether a local government corporation's failure to submit various public financing agreements for the Attorney General's examination renders the entire underlying transaction void. We answer no.

A city created a local government corporation to assist with financing improvements to a public improvement district (PID). As part of the multi-step financing transaction, the corporation borrowed $17.4 million from an out-of-state conduit bond issuer under a loan agreement and promissory note. The Transportation Code requires that a local government corporation "shall submit" such a note and its supporting contracts to the Attorney General for examination. The corporation did not do so, but the transaction went forward.

After spending most of the money, the city and corporation sued the current bondholder, arguing that the transaction is void because the corporation did not submit the documents and thus it need not repay the loan. Like the trial court and court of appeals, we hold that although the statute mandates submission to the Attorney General, a logically necessary consequence of failing to do so is that the corporation loses the statutory defense of incontestability—not that the entire transaction is void. We also hold that the transaction did not violate the PID Act, which imposes certain restrictions on bonds issued by the city or corporation, as neither was the issuer here. We therefore affirm the court of appeals' judgment.

## BACKGROUND

In 2018, the leadership of petitioner City of Hutto sought to improve the area around its city hall. The City authorized the creation of a PID: a geographic area in which property owners finance planned public improvements that will benefit their properties. The City's plan was to develop the area with parks and open space, community facilities, parking, and walkways. The initial improvements included

2

landscaping, sewage, drainage, and paving.  The total budgeted cost of the initial improvements was $17.4 million.  The City owns the improvements and most of the property in the PID.

To finance the improvements using the PID Act, the City created a local government corporation—petitioner River Creek Development Corporation—under the Transportation Code.  River Creek borrowed $17.4 million from a conduit bond issuer in Wisconsin—respondent Public Finance Authority (PFA)—through a Loan Agreement and Promissory Note.  From there, River Creek contracted with a construction company—respondent 79 HCD Development, LLC—to build the improvements in the PID.  The City agreed to purchase the improvements from River Creek through an Interlocal Agreement.  The Interlocal Agreement was structured as an installment sale, with payments for the improvements set to come from assessments levied on property in the district and other revenues.  To fund the original loan to River Creek, PFA issued bonds, which were subsequently purchased by respondent Preston Hollow Capital.  In sum, the transaction was structured so that the City would levy assessments on the properties within the PID, the City would then use the assessment funds to pay River Creek for the improvements under an installment sales contract, and River Creek would use those funds to pay Preston Hollow under the Loan Agreement and Promissory Note.

A few months after the transaction was complete, the people of Hutto elected new city leadership.  Within a year, the City was in deep financial distress, and its new leaders blamed former leaders for financial mismanagement.  New leadership requested an opinion from

the Texas Attorney General on the validity of the transaction. The Attorney General responded, declining to opine on its propriety.

One month after receiving the Attorney General's response, the City and River Creek filed this lawsuit, seeking a declaratory judgment that the transaction was void for various reasons, including that the Promissory Note and supporting contracts were not submitted to the Attorney General for examination as required by law. Preston Hollow counterclaimed, seeking declarations that the note and contracts were enforceable against the City and River Creek and did not have to be submitted to the Attorney General. Preston Hollow moved for summary judgment on all claims, which the trial court granted. The court awarded Preston Hollow attorney's fees based on additional motions and supporting evidence.

The court of appeals affirmed. It held that the note and its supporting contracts were required to be submitted to the Attorney General but the failure to submit them did not render them void because the Legislature did not condition the validity of a note on the Attorney General's approval. 730 S.W.3d 475, 484 (Tex. App.—Austin 2024). It also held that the transaction did not violate certain sections of the PID Act, as River Creek and the City claimed, because those sections did not apply to the transaction. *Id.* at 487. Finally, it rejected River Creek and the City's challenge to the trial court's consideration of certain evidence and their challenge that the fee award was not equitable and just. *Id.* at 488-89. We granted review.

ANALYSIS

We agree with the court of appeals' disposition of each issue presented by River Creek and the City. First, we hold that River Creek was required to submit the note and its supporting contracts to the Attorney General, but River Creek's failure to do so does not render the entire transaction void. Second, the transaction does not violate the PID Act. Finally, the trial court's consideration of two attorney opinion letters was harmless error, and the trial court did not need separate proof to determine that the fees it awarded were equitable and just.

## I.     River Creek's failure to seek the Attorney General's approval does not render the transaction void.

In their first issue, River Creek and the City argue that Chapter 431 of the Texas Transportation Code imposed a mandatory duty to submit the Promissory Note and its supporting contracts (the Loan Agreement and Interlocal Agreement) to the Attorney General. We agree. But we disagree that River Creek's own failure to submit these documents renders them void and unenforceable.

Section 431.070 of the Transportation Code authorizes a local government corporation like River Creek to issue "bonds and notes" under any power or authority available to it.[1] TEX. TRANSP. CODE § 431.070. This provision contains two limitations on the notes a corporation may issue: the note must be issued "to carry out [the

---

[1] The statute does not define the term "note," but we agree with the court of appeals that the plain meaning of the word encompasses the Promissory Note entered into by River Creek and PFA. *See* 730 S.W.3d at 482.

corporation's] purpose," and the note must "state on its face that it is not an obligation of the State of Texas." *Id.* Section 431.071 then instructs that the "corporation *shall* submit a bond or note authorized under Section 431.070 and a contract supporting its issuance to the attorney general for examination." *Id.* § 431.071(a) (emphasis added). The Attorney General, in turn, "shall approve" the note upon finding that the note and supporting contract are "authorized under this chapter." *Id.* § 431.071(b). "After approval by the attorney general," the note and contract "may not be contested for any reason." *Id.* § 431.071(c).

"Shall" means "must." And when the Legislature uses the word "shall," it creates a mandatory duty. *Image API, LLC v. Young*, 691 S.W.3d 831, 840-41 (Tex. 2024). The parties agree that the Legislature imposed this particular duty on the corporation. *See* TEX. TRANSP. CODE § 431.071. When a corporation does not fulfill this duty, as River Creek did not here, a court must ask "what consequences follow"? *Image API*, 691 S.W.3d at 840. We will apply a particular consequence if it is either "explicit in the text or logically necessary to accomplish the statute's purpose." *Id.* (internal quotation marks omitted). River Creek and the City argue that the logically necessary consequence of River Creek's own failure to obtain Attorney General approval under Section 431.071 is that the unapproved note and supporting contracts are unauthorized and therefore void, making River Creek's promise to repay the $17.4 million unenforceable. We disagree.

The Transportation Code does not expressly provide a consequence for a corporation's *failure* to obtain Attorney General approval under Section 431.071, but it does expressly provide a

6

consequence for a corporation's *success* in obtaining approval—namely, the corporation enjoys the statutory defense of incontestability. TEX. TRANSP. CODE § 431.071(c) ("After approval by the attorney general, a bond, note, or contract may not be contested for any reason."). We hold that one "logically necessary" consequence of a corporation's failure to obtain approval is simply the inverse of the express consequence of obtaining approval: the corporation cannot invoke the statutory defense of incontestability.[2] *Image API*, 691 S.W.3d at 841.

It is not logically necessary, on the other hand, for the Court to conclude that a note is unauthorized unless approved by the Attorney General. Such a reading would be wrong for three reasons.

*First*, the statute distinguishes between authorization and approval. The text plainly indicates that a note is authorized under Section 431.070 independent of whether the Attorney General has examined and approved it as required by Section 431.071. *See* TEX. TRANSP. CODE § 431.071 (directing the corporation to submit a note "authorized under Section 431.070" to the Attorney General for examination). Under this framework, authorization pre-exists and is separate from approval. Thus, whether the Attorney General approves the note does not determine whether the note is authorized.[3]

---

[2] The parties contend that the consequence of failing to obtain approval is either that the contracts are void or that they are contestable. Because the parties have not argued for any other consequences, we do not address whether or in what circumstances any others might apply.

[3] We observe that Section 431.071(b) refers to notes and supporting contracts that the Attorney General finds are "authorized under this *chapter*," as opposed to "authorized under *Section 431.070*," as the Legislature said in Section 431.071(a). TEX. TRANSP. CODE § 431.071 (emphases added). But any

7

Under River Creek and the City's reading, on the other hand, a note and its supporting contracts are either incontestable or totally void. We see no textual indication that the Legislature adopted this all-or-nothing binary approach, foreclosing the existence of notes that are not incontestable but are proven to be authorized.

*Second*, the statute's purposes[4] are fulfilled under our plain-text reading without the addition of River Creek and the City's proposed consequence. The Attorney General disagrees, arguing that "treating only those instruments approved by [him] as authorized and valid[] is necessary to accomplish the Act's purpose of properly financing public improvements," protecting the note's maker and payee, and safeguarding citizens from unauthorized transactions and expenditures of public funds for improper purposes.[5] But these purposes are also accomplished by our reading.

An authorized note and accompanying contracts "shall" be approved by the Attorney General and afterward cannot be contested

---

note that the Attorney General examines under subsection (b) has already fulfilled the requirement that it be submitted to the Attorney General.

[4] The stated purposes of the Transportation Corporation Act appear to be specific to transportation corporations and not relevant here. *See* TEX. TRANSP. CODE § 431.002. Courts should exercise caution in attributing other purposes to a statute, ensuring that they are grounded firmly in the statute's express requirements. *Malouf v. State ex rel. Ellis*, 694 S.W.3d 712, 730 (Tex. 2024) ("We proceed with great hesitation when asked to construe statutory text based on the statute's purpose, particularly when the statute never expresses its purpose.").

[5] The Attorney General does not explain why he would not have approved this particular transaction even if it had been properly submitted for review.

for any reason. TEX. TRANSP. CODE § 431.071. When transaction documents are submitted to the Attorney General, permissible uses of public funds will be approved and afforded the protection and increased reliability that results from incontestability. Impermissible uses of public funds will not be approved and will be subject to challenge as unauthorized by anyone with standing to sue, including the Attorney General. This enforcement mechanism likewise protects the maker, payee, and public.

*Third*, the Legislature knows how to condition a transaction's authorization on the Attorney General's approval. *See, e.g.*, TEX. GOV'T CODE § 1371.059 (providing for incontestability if an obligation under that chapter is approved by the Attorney General and expressly stating that an obligation is "not valid, binding, or enforceable unless the obligation is approved by the attorney general"); *id.* § 1202.003 (requiring an issuer to submit a public security to the Attorney General and stating that "the issuance of a public security except in compliance with this chapter is prohibited"). It chose not to do so here, and we generally treat the Legislature's silence in such a context as purposeful. *See Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 497 (Tex. 2013) ("When the Legislature expresses its intent regarding a subject in one setting, but, as here, remains silent on that subject in another, we generally abide by the rule that such silence is intentional.").

For these reasons, we hold that the instruction to submit a note like the Promissory Note here to the Attorney General for examination and approval is mandatory, but a consequence of failing to obtain approval is that the note and its supporting contracts may be contested

9

by anyone with standing to challenge them—not that the transaction is void.

## II. The Interlocal Agreement does not violate the PID Act.

In their second issue, River Creek and the City contend that the Interlocal Agreement violates the PID Act because the special assessments levied on properties in the PID are ultimately used in part to pay the out-of-state conduit bond issuer's costs of issuance.[6] We disagree and hold that the PID Act allows the City to pledge its assessment income to make installment payments on its agreement to buy the improvements from River Creek regardless of whether River Creek uses those funds, in turn, to satisfy its debt to the out-of-state bond issuer.

River Creek and the City contend that the PID Act allows the City to pledge income to cover the cost of issuing bonds only when the bonds are issued "under Section 372.024." TEX. LOC. GOV'T CODE §§ 372.023(d)(3), 372.026(f). And under Section 372.024, the bonds must be issued by certain entities of this State or a nonprofit corporation acting on their behalf. *Id.* § 372.024 (citing TEX. GOV'T CODE § 1201.002). Here, the bonds to fund the improvements to the PID were issued by a Wisconsin entity, not by River Creek or any entity of the State of Texas. River Creek and the City therefore argue that the City

---

[6] River Creek and the City also assert that the Loan Agreement and Promissory Note between River Creek and the issuer are void under the PID Act. We agree with Preston Hollow and the court of appeals that River Creek and the City did not properly preserve their challenge to these agreements.

10

cannot pledge special assessments to pay the out-of-state issuer's costs of issuance.

As the court of appeals explained, this argument misunderstands the statute and the transaction at issue here. The Local Government Code sets forth various methods of funding costs of improvements to a PID using special assessments on properties in the district. *Id.* § 372.023. One method allows improvement costs to be paid with funds obtained from the issuance and sale of bonds by certain entities of the State under Section 372.024, which are paid back using assessment income. *Id.* § 372.023(d)(3). A different method allows improvement costs to be paid under an installment sales contract between the municipality and a person who acquires, installs, or constructs the improvements, with assessment income used to make the installment payments. *Id.* § 372.023(d)(1).

Here, the parties used the second method rather than the first. The Interlocal Agreement is by its terms an installment sales contract between the City and River Creek, which acquired the improvements. Thus, the limits River Creek and the City identify regarding which entities can issue bonds and under what circumstances do not apply to this agreement.

River Creek and the City express concern that their own transaction seeks to accomplish indirectly what would be prohibited if attempted directly. Although we understand this concern, it must be addressed to the Legislature. We interpret statutes by hewing to their plain text and eschewing speculation about what their drafters may have intended to accomplish. This approach is not a rule of convenience;

11

it is a foundational component of due process and the rule of law.[7] Because all people are expected to know and follow the laws enacted by their elected representatives,[8] the people must be able to depend on what those laws say about their rights and obligations.[9] In particular, parties planning financial transactions must be able to rely on courts to apply statutes governing the form and substance of those transactions as written.[10] "[F]illing" what could be perceived as a statutory "gap" or loophole "is best left to legislators, not courts or agencies." *TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 176 (Tex. 2013); *see also id.* at 184 (declining to "stretch" tax statute "beyond its textual reach").

---

[7] *King St. Patriots v. Tex. Democratic Party*, 521 S.W.3d 729, 743 (Tex. 2017); *State v. Int'l & Great N. Ry. Co.*, 179 S.W. 867, 868 (Tex. 1915); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 345 (2012) ("In republics, *the very nature of the constitution requires the judges to follow the letter of the law*; otherwise the law might be explained to the prejudice of every citizen, in cases where their honor, property, or life is concerned." (quoting C. MONTESQUIEU, THE SPIRIT OF LAWS 75 (T. Nugent trans., 1949))).

[8] *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 n.3 (Tex. 1990).

[9] *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).

[10] *E.g.*, *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (rejecting court of appeals' extension of tax statute and explaining that "[w]ritten laws are meant to be understood and lived by. If a fog of uncertainty surrounded them, if their meaning could shift with the latest judicial whim, the point of reducing them to writing would be lost."); *Hanover Bank v. Comm'r*, 369 U.S. 672, 687 (1962) ("[W]e are not at liberty, notwithstanding the apparent tax-saving windfall bestowed upon taxpayers, to add to or alter the words employed to effect a purpose which does not appear on the face of the statute.").

**III.    The remaining issues present no grounds for reversal.**

River Creek and the City next contend that the trial court erred in considering as summary judgment evidence two attorney opinion letters addressing the validity of the transaction at issue because they (1) were hearsay and (2) contained legal conclusions.  We agree with the court of appeals that (1) River Creek and the City did not properly object to this evidence as hearsay in the trial court, and (2) although the opinion letters may have been inadmissible as legal conclusions, the trial court's decision on summary judgment was one of law.  730 S.W.3d at 487-88.  The inclusion of the letters was therefore harmless.

Finally, River Creek and the City argue that insufficient evidence supports the trial court's determination that awarding fees to Preston Hollow was "equitable and just."  We disagree.  Although the Declaratory Judgments Act's requirements that attorney fee awards be "reasonable and necessary" are matters of fact, its requirements that awards be "equitable and just" are addressed to the trial court's discretion.  TEX. CIV. PRAC. & REM. CODE § 37.009; *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (citations omitted).  This Court has explained that whether fees are "equitable and just" is not a fact question "because the determination is not susceptible to direct proof but is rather a matter of fairness in light of all the circumstances." *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004). Accordingly, Preston Hollow was not required to introduce separate facts proving by a preponderance of the evidence that the requested fee award would be equitable and just.  *See Huynh v. Blanchard*, 694

13

S.W.3d 648, 675 (Tex. 2024) (explaining that "matters of . . . equitable discretion [are] for a trial court—not a jury—to decide").

**CONCLUSION**

We hold that River Creek's failure to submit the promissory note and its supporting contracts to the Attorney General does not render the transaction void, nor does the transaction violate the PID Act. We also hold that the trial court's consideration of the attorney letters was harmless and that the trial court did not need separate evidence to determine that the fee award was equitable and just. We therefore affirm the court of appeals' judgment.

J. Brett Busby
Justice

**OPINION DELIVERED:** June 12, 2026